IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL COTTERILL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.<br><br>　　　　Defendants.<br>_____/ | No. C 08-02295 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

　　　　Now before the Court are two motions to dismiss: one filed by the Regents of the University of California ("Regents"), Dr. Andrew Braun, Dr. Esther Choo, Dr. Trudy Singzon, Dr. Jessica Folger, Dr. Regina Graham, Dr. Tamar Seiver, Dr. Frederick Huang, Dr. Hurbert Ochitill, Dr. Richard Patel (sued herein as "Rick Patel"), Dr. Alicia Lieberman, Dr. Mark Leary, and Dr. Robert Okin (all doctors herein referred to as "Regents Physicians") (collectively, "Regents Defendants"), and a second motion to dismiss filed by Defendants City and County of San Francisco ("the City"), Mayor Gavin Newsom ("Newsom"), Director of Public Health Mitchell Katz ("Katz"), Chief of Police Heather Fong ("Fong"), Public Defender Jeff Adachi ("Adachi"), Robert Bunker ("Bunker"), Troy Williams ("Williams") (collectively, "City Defendants").

　　　　Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS the Regents Defendants' motion to dismiss and GRANTS IN PART AND DENIES IN PART the City

Defendants' motion to dismiss.

## BACKGROUND

On July 30, 2006, co-defendant police officers, who are not parties to these motions, went to Plaintiff Cheryl Cotterill's apartment in response to a noise complaint resulting from a broken window. (Third Amended Complaint ("TAC") at 3:16-20.)  The police officers later returned to Cotterill's apartment, and took her to the San Francisco General Hospital ("SFGH"), Psychiatric Emergency Services ("PES"). (*Id*. at 3:26, 4:21-22.)  The police officers detained Cotterill in accordance with section 5150 of the California Welfare and Institutions Code ("Section 5150"), which provides that peace officers may detain a person who is determined to be a danger to herself or others, for 72-hour involuntary treatment at a designated facility.  Cal. Welf. & Inst. Code § 5150.  (TAC at 4:15-17.)  The Section 5150 application, completed by the police officers, indicated that Cotterill was a danger to herself because she broke the windows of her apartment, refused to talk to the police officers, and went into a "catatonic state."  (*Id*. at 5:3-9.)

Cotterill was treated in several departments at SFGH before being admitted to the hospital's psychiatric department.  Cotterill was initially treated in the emergency department, by Drs. Braun and Choo, after she informed PES that she did not intend to harm herself.  (*Id*. at 5:11-17, 6:3-5.)  Cotterill alleges she was given medication and treated without providing consent.  (*Id*. at 6:1-2.)

On or about July 31, 2006, Cotterill was admitted to the family and community medicine department where, she alleges, she was treated by Drs. Singzon, Fogler, Graham, and Lieberman without providing consent.  (*Id*. at 6:5-7, 6:28, 7:14.)  At this time, Dr. Graham decided to hold Cotterill under section 5250 of the California Welfare and Institutions Code ("Section 5250"), which provides that persons held under Section 5150 may, upon proper evaluation, be certified for intensive treatment for up to 14 days.  Cal. Welf. & Inst. Code § 5250.  (TAC at 6: 14-19.)

On August 1, 2006, Cotterill alleges that a probable cause hearing was held concerning her detention.  (*Id*. at 9:1-4.)  Cotterill did not attend this hearing because her attorney, Deputy

Public Defender Bunker, allegedly failed to inform her that it was taking place and waived her presence. (*Id*. at 9:11-12, 10:1-2.)

On August 4, 2006, Cotterill was admitted to the hospital's psychiatric department. (*Id*. at 7:13-16.) Dr. Ochitill indicated on an admittance form that Cotterill was "gravely disabled." A patient admission database, however, indicated that Cotterill was cooperative, her thought process was logical, and her speech and behavior was within normal limits. (*Id*. at 7:15-24.)

On August 5, 2006, Dr. Huang indicated that Cotterill required inpatient care because she was unorganized and unable to care for herself. (*Id*. at 7:25-28.)

On August 7, 2006, Dr. Seiver indicated that Cotterill would be discharged when she cooperated with the staff and was no longer a danger to herself. (*Id*. at 8:1-3.) The next day, on August 8, 2006, after a hearing was held concerning Cotterill's Section 5250 hold, she was discharged from SFGH. (*Id*. at 8:14-17.)

Cotterill alleges that both the Regents and City Defendants violated her rights under 42 U.S.C. Section 1983 ("Section 1983"). She also brings numerous California state law claims, including claims for violations of the California Welfare and Institutions Code, the California Civil Code, and negligence.

On December 26, 2007, Cotterill filed her original complaint in state court. Cotterill amended her complaint on December 28, 2007, and again on April 3, 2008. On May 2, 2008 the City Defendants removed the action. On August 19, 2008, this Court granted Defendants' motion to dismiss certain causes of action and also granted the Regents' motion to strike Cotterill's prayer for punitive damages. (Order dated August 19, 2008 granting Defendants' motion to dismiss certain causes of action and granting Defendant Regents' motion to strike prayer for punitive damages at 8 ("August 19, 2008 Order").)

On January 29, 2009, the Court granted in part and denied in part Cotterill's motion to file a third amended complaint. The Court permitted Cotterill to add claims against Williams, Bunker, and Adachi, and also permitted Cotterill to include a three additional claims: (1) a claim under Section 1983 that alleged violations of her Fourth Amendment and Due Process rights premised upon an alleged conspiracy between City Defendants Bunker, Williams, and

3

1 Regents Defendants Drs. Graham, Seiver, Patel, and Leary; (2) a claim for negligence against
2 the Regents and the Regents Physicians; and (3) a claim based on violations of California Civil
3 Code section 52.1. (Order dated January y27, 2009 granting in part and denying in part
4 Plaintiff's motion to file a third amended complaint at 3-7) ("January 27, 2009 Order"). The
5 Regents Defendants and City Defendants now move to dismiss several of the claims in the
6 TAC. The Court will consider each defendant's motion in turn.

## ANALYSIS

### A.  Legal Standards Applicable to Motions to Dismiss.

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal upon the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A district court should grant a motion to dismiss if the plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level ..." *Twombly*, 550 U.S. at 556 (citations omitted). In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible. *Id.* at 570.

### B.  The Regents Defendants' Motion.

The Regents Defendants argue that the seventh, eighth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, twenty-second, and twenty-third causes of action should be dismissed because both the Regents and Regents Physicians named in each cause of action are entitled to Eleventh Amendment immunity. In each of the causes of action, except the seventh,

4

twentieth, and twenty-third, Cotterill names both the Regents and Regents Physicians as defendants. She names only certain Regents Physicians in the seventh, twentieth, and twenty-third causes of action. The twentieth cause of action is a federal law claim, but the remaining challenged claims all arise under California state law. For the reasons that follow, the Court concludes that all of the claims, against both the Regents and Regents Physicians, in the seventh, eighth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, twenty-second, and twenty-third causes of action, are barred by the Eleventh Amendment. The Court will address the state claims and federal claim in turn.

**1.     The Regents and Regents Physicians are Entitled to Eleventh Amendment Immunity From State Claims.**

The Regents Defendants contend that they are subject to Eleventh Amendment immunity from Cotterill's state claims. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). The Regents is entitled to Eleventh Amendment immunity because a California college district is considered a state agency. *See Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).

Cotterill contends that the Regents Defendants waived Eleventh Amendment immunity by virtue of their conduct and statements.[1] Aside from expressly consenting to suit, the state may also waive Eleventh Amendment immunity if it engages in certain affirmative "conduct that is incompatible with an intent to preserve that immunity." *Hill v. Blind Indus. & Services*, 179

---

[1] Cotterill previously argued that the Regents Defendants waived immunity by cooperating in the removal of this case. In its August 18, 2009 Order, the Court rejected this argument, finding that Regents Defendants did not join the City and County of San Francisco's petition, and that there was no evidence suggesting the unequivocal submission to the consent of the Court. (August 18, 2009 Order at 4-5.) The Court will not reconsider this argument.

5

F.3d 754, 758 (9th Cir. 1999). *Hill* establishes the general principle that a state defendant may not appear in federal court, "actively litigate the case on the merits, and only later belatedly assert its immunity from suit in order to avoid an adverse result." *Id.* at 763. At the same time, state defendants, "like other defendants, are allowed to assert legitimate alternative defenses." *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1149 (9th Cir. 2007). Thus, the Ninth Circuit has held that a state does not waive immunity by filing a third-party complaint where such complaint was "a defensive move which was not incompatible with an intent to preserve sovereign immunity." *Id.* Cotterill contends that Regents Defendants waived the privilege of immunity because they failed to assert immunity as to the state law claims in their original motion to dismiss and in their answer to the second amended complaint. (Opp. Br. at 3.) In addition, Cotterill argues that the representations in the August 22, 2008 Case Management Statement and the Regents Defendants' participation in discovery demonstrate waiver under *Hill*. In *Hill*, the defendant waited until the first day of trial to assert Eleventh Amendment immunity. *Hill*, 179 F.3d at 756. In this case, the Regents Defendants asserted Eleventh Amendment immunity as to the federal claims early in this litigation, on June 2, 2008. (Defendants' first motion to dismiss at 6-8.) Although the Case Management Statement provides that Regents Defendants' counsel waived immunity as to the remaining causes of action on October 1, 2008, two days later, on October 3, 2008, the Regents Defendants' counsel confirmed that Regents Defendants would invoke Eleventh Amendment immunity as to the state claims. (Joint Case Management Statement at 8.) Cotterill received fair warning that the Regents Defendants planned to assert immunity as a defense to the state claims once she filed her third amended complaint, and this defense was not untimely under the holding in *Hill*. Cotterill's reliance on *Hill* is therefore misplaced.

In addition, the Regents Defendants' participation in discovery also does not establish waiver. A state defendant may prepare for litigation without the fear that such conduct will be deemed incompatible with an intent to preserve immunity. *See Aholelei*, 488 F.3d at 1149 (explaining that state defendants may engage in defensive tactics that are not incompatible with the assertion of immunity). By engaging in discovery, the Regents Defendants were preparing

6

their defense. This conduct, without more, does not constitute actively litigating on the merits, nor is it incompatible with an intent to preserve sovereign immunity. In sum, the Regents Defendants have not waived the defense of Eleventh Amendment immunity to Cotterill's state claims. Accordingly, the claims against all of the Regents Defendants in the seventh, eighth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, twenty-second, and twenty-third causes of action, are dismissed.[2]

**2. The Federal Claim Against the Regents Defendants is Dismissed Without Leave to Amend.**

In her twentieth cause of action, Cotterill alleges that Drs. Graham, Seiver, Leary, and Patel (as supervisor) conspired to prevent her from attending a probable cause hearing on August 1, 2006, and that such acts were carried out by the physicians in their personal capacity. State officials acting in their official capacities are entitled to immunity when they are sued in federal court. *Aholelei*, 488 F.3d at 1147. Moreover, the Supreme Court has explicitly held that state officials acting in their official capacities are immune from liability under Section 1983 because such officials do not constitute "persons" under Section 1983. *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989). The Regents Defendants contend that the federal law claim against Drs. Graham, Seiver, Leary, and Patel in the twentieth cause of action should be dismissed because each physician is entitled to Eleventh Amendment immunity. Cotterill contends this claim is not barred by the Eleventh Amendment because she has sued the doctors in their personal capacity.

---

[2] Cotterill also argues that the twenty-second cause of action, alleging negligence against the Regents, Dr. Patel, and Regents' "employees," should be sustained because each defendant owed a duty to Cotterill under California law. Because the Court determines that the Regents Defendants were acting in their official capacities, and are immune, Cotterill's claim for negligence is barred. Regardless, Cotterill fails to allege facts that establish the required element of duty. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1093 (2004) (finding that a plaintiff must show that the defendant had a duty to use due care). First, the California Welfare and Institutions Code does not impose a duty upon any of the Regents Defendants. If there were any duty, it would appear to lie with her attorney. Despite her objections to the quality of representation, Cotterill acknowledges that City Defendant Bunker represented her from at least August 1, 2006, until August 8, 2006. (TAC at 9:9-12.) Cotterill fails to establish that the harm resulting from failing to notify her of the hearing was foreseeable to the Regent Defendants. Finally, *Giraldo v. California Department of Corrections*, 168 Cal. App. 4th 231, 250 (2008), relied upon by Cotterill, concerns the special relationship between jailers and inmates and is inapposite.

7

1    Cotterill must allege sufficient facts demonstrating that the doctors acted in their personal
2    capacities in order for her claim to survive a motion to dismiss.  A plaintiff must allege more
3    than the bare assertion that a defendant was acting in his personal capacity when he carried out
4    the alleged wrongful acts.  *See Brunius v. Parrish*, 132 Cal. App. 4th 838, 859 (2005) (rejecting
5    plaintiff's assertion that defendant mining board members and employees were acting in their
6    personal capacities, and instead holding that the defendants were acting in their official
7    capacities).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
8    detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to
9    relief requires more than labels and conclusions, and a formulaic recitation of the elements of a
10   cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations
11   omitted).  Cotterill alleges that the doctors participated in the alleged conspiracy to keep her
12   from the August 1, 2006 probable cause hearing by not advising her of the hearing and failing
13   to certify her request for release.[3]   These alleged omissions by the doctors occurred in the
14   course of treating Cotterill, however, and therefore do not demonstrate that any of the
15   physicians were acting outside the course and scope of his employment.
16   In her opposition, Cotterill cites to the Court's August 19, 2008, and January 27, 2009
17   Orders to support her assertion that the Regents Physicians should not be entitled to immunity.
18   (Opp. Br. at 6.)  In those Orders, the Court explained that to the extent Cotterill could allege
19   facts demonstrating that the doctors acted in their personal capacities, such claims could not be
20   dismissed pursuant to the Eleventh Amendment.  Still, Cotterill maintains the burden of alleging
21   sufficient facts to demonstrate that the Regents Physicians acted in their personal capacities.
22   Indeed, the Court granted leave to amend to provide Cotterill with just this opportunity.
23   Because the allegations in the newly-amended complaint fail to indicate the doctors acted in
24   their personal capacities, however, the doctors are immune under the Eleventh Amendment and
25   the twentieth cause of action is dismissed.  Because the Court has permitted Plaintiff to amend

---

[3] The complaint indicates an August 6, 2006 hearing date.  (TAC at 30:28.)  The facts section of the complaint, however, refers to only an August 1, 2006 hearing and an August 8, 2006 hearing. As far as the Court can tell, the August 6, 2006 date is an error.

8

1  her complaint, with specific instructions as to how to avoid dismissal of this claim, the Court
2  grants the motion to dismiss as to the twentieth cause of action without leave to amend.

### C. The City's Motion.

The various City Defendants move for dismissal of the claims pending against them. The Court will address each separate defendant in turn.

#### 1. Defendant Deputy Public Defender Robert Bunker.

Under Section 1983, Robert Bunker, acting as the deputy public defender, is not considered a state actor when performing traditional lawyer functions. *See Polk County v. Dodson*, 545 U.S. 312, 325 (1981); *Miranda v. Clark County, Nevada*, 319 F.3d 465, 468 (9th Cir. 2003). However, a public defender may be liable if he conspires with state officials acting under color of state law, to deprive a client of her constitutional rights, in violation of Section 1983. *Tower v. Glover*, 467 U.S. 914, 920-22 (1984). On this basis, the City Defendants concede that Plaintiff has stated a claim against defendant Bunker under Section 1983. (Reply at 2 n.1.) Therefore, the Court DENIES the motion to dismiss the claim for conspiracy to violate Section 1983 against defendant Bunker.[4]

#### 2. Defendant Public Defender Jeff Adachi.

Plaintiff names defendant Adachi in the twenty-first cause of action, alleging supervisory liability under Section 1983. Plaintiff alleges that Adachi failed to maintain and implement policies and procedures to ensure that the Public Defenders' Office properly represents persons detained under Sections 5150 and 5250. Specifically, Plaintiff alleges that Adachi, as the supervisor and head of his office, failed to document and maintain files concerning waivers of appearance, rights to request release, reasons for release and representation of persons. The City argues that Adachi is not a state actor because the actual allegations against him are not administrative in nature and are instead "traditional law firm functions." The Court must

---

[4] Plaintiff also requests that the Court grant leave to amend to add a cause of action to allege a state malpractice claim. In *Barner v. Leeds*, 24 Cal. 4th 676, 691-92 (2000), the California Supreme Court held that public defenders representing criminal defendants may be liable under state law for malpractice. However, the burden is different in this non-criminal context. Because neither party adequately briefed this issue, should Plaintiff wish to amend to add a cause of action for state malpractice after this Order, the Plaintiff must move on this separate basis.

9

1 determine whether the alleged misconduct was carried out as part of Adachi's administrative
2 capacity.

3 Public defenders are not considered state actors when carrying out the traditional functions
4 of a lawyer. *See Polk County*, 454 U.S. at 325; *Miranda*, 319 F.3d at 468. The allegations of
5 the third amended complaint describe administrative functions carried out by defendant Adachi
6 and involve making determinations in regard to the allocation of resources as the head of the
7 office. The allegations concerning whether the Public Defenders' Office adequately documents
8 the representation of certain types of clients, specifically persons detained under Sections 5150
9 and 5250, are properly characterized as administrative. *See Miranda*, 319 F.3d at 469 (holding
10 that the County Defender was acting "solely as the administrative head of the agency" when he
11 allegedly implemented policies concerning polygraph tests and the appointment of
12 inexperienced attorneys to capital cases).

13 The City relies on the Seventh Circuit's opinion in *Powell v. Davis*, 415 F.3d 722, 727
14 (7th Cir. 2005), to support the argument that Plaintiff's factual allegations in this matter fall into
15 the category of conduct of a traditional law firm, rather than administrative functions.
16 Notwithstanding the fact that the case is not binding authority on this Court, the facts are readily
17 distinguishable. In *Powell*, the plaintiff was convicted of murder and subsequently sought
18 habeas relief. The plaintiff contended that his public defender engaged in misconduct by
19 indefinitely staying his case and the appellate court determined that the public defender's case
20 management policies did not constitute state action. However, in this matter, the facts alleged
21 are more accurately characterized as administrative acts carried out by Adachi in his
22 management as head of the Public Defenders' Office. *See Miranda*, 319 F.3d at 469.

23 The City also argues that even if Adachi is considered a state actor, his alleged
24 involvement is insufficient to state a claim for supervisory liability. A supervisor is liable if he
25 personally participated in the constitutional deprivation or there is a sufficient causal connection
26 between the supervisor's conduct and the constitutional violation. *Redman v. County of San*
27 *Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (holding that supervisory liability may be imposed
28 against an official for his "own culpable action or inaction in the training, supervision, or

10

control of his subordinates, for his acquiescence in the constitutional deprivations ... or for conduct that showed a reckless or callous indifference to the rights of others.")  The supervisor's direct participation in the alleged constitutional violation is not required for a finding of liability.  *See id.* at 1447 (the "requisite causal connection can be established ... by setting in motion a series of acts by others which the actor knows or reasonable should know would cause others to inflict the constitutional injury"); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (holding that a police chief may be liable where he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonable should have known, would cause others to inflict constitutional injury.")  The City's argument that Plaintiff has failed to allege facts demonstrating Adachi's personal involvement in the alleged constitutional violation is unpersuasive.  *See Hanson v. Black*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that where there is no overt participation in the allegedly wrongful act, supervisor liability may attach when the supervising official implements "a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'")

The Court finds that the allegations in the complaint sufficient to plead a causal connection between Adachi's alleged failure to implement proper procedures and the alleged deprivation of Plaintiff's constitutional rights.  On a motion to dismiss, the facts as alleged are sufficient to demonstrate that Plaintiff had a constitutional right to appear at her probable cause hearing, and that Adachi, as the head of the Public Defenders Office had a custom of not properly documenting the representations of detainees and that the policy was a moving force behind the alleged deprivation.  At this procedural stage, the Court finds that Adachi may be liable in his supervisory capacity under the facts as alleged in the amended complaint and, on this basis, DENIES the CityDefendants' motion to dismiss the twenty-first cause of action against Adachi.

**3. Defendants San Francisco Mayor Gavin Newsom, Director of San Francisco Department of Public Health Mitchell Katz and Chief of Police Heather Fong.**

Plaintiff names Mayor Newsom, Director of Public Health Katz, and Chief of Police Fong in the sixth and eighteenth causes of action for supervisory liability under Section 1983 and for

11

1 injunctive relief. Plaintiff alleges that these defendants failed to train and supervise
2 subordinates regarding the detention, confinement and treatment of persons held under Sections
3 5150 and 5250 and that the officials were aware of the policy of treating patients at
4 unauthorized facilities (presumably in the emergency room instead of the hospital's psychiatric
5 units).

6 The City Defendants contend that Plaintiff has failed to demonstrate that any of these
7 officials were sufficiently involved in the alleged violations of Plaintiff's constitutional rights.
8 A supervisor is liable if he personally participated in the constitutional deprivation or there is a
9 sufficient causal connection between the supervisor's conduct and the constitutional violation.
10 *Redman*, 942 F.2d at 1446. "Under § 1983, a supervisor is only liable for his own acts. Where
11 the constitutional violations were largely committed by subordinates, the supervisor is liable
12 only if he participated in or directed the violations." *Humphries v. County of Los Angeles*, 554
13 F.3d 1170, 1201-02 (9th Cir. 2009) (granting summary judgment to defendant sheriff on the
14 basis that plaintiff presented no evidence that the sheriff had any direct involvement in the
15 deprivation of constitutional rights).

16 With regard to defendants Newsom and Katz, Plaintiff has failed to allege a sufficient
17 causal connection between these officials' conduct and the alleged deprivation of rights. Unlike
18 the practices alleged by the Public Defenders' Office, which at this procedural stage make
19 dismissal of its head unwarranted, Plaintiff has failed to allege how the Mayor and the Director
20 of Public Health were involved in the conduct at issue in this case. These officials implement
21 and oversee a broad array of policies and their connection to the alleged constitutional
22 violations is too attenuated. Plaintiff has failed to allege "enough facts to state a claim to relief
23 that is plausible on its face." *Twombly*, 550 U.S. at 544.

24 However, regarding defendant Fong, the allegations in the complaint indicate that Fong
25 directed the implementation of the policy Plaintiff complains of regarding the detention of
26 persons pursuant to Section 5150 and 5250. *See Humphries*, 554 F.3d at 1202 (holding that a
27 supervisor may be liable if she directed the constitutional violations). Because Plaintiff has
28 made out the barest allegation that defendant Fong directly oversaw the officers who detained

12

Plaintiff, there are allegations of a causal connection between the acts of local government officials and the alleged deprivation of Plaintiff's rights to withstand a motion to dismiss.

Accordingly, the Court GRANTS the motion to dismiss as to defendants Mayor Newsom and Director Katz, but DENIES the motion to dismiss as to defendant Chief Fong.

**4.     Facial Challenge to Section 5150 and 5250 and Nineteenth Cause of Action.**

Plaintiff challenges the constitutionality of the California Welfare and Institutions Code Sections 5150 and 5250 in her nineteenth cause of action and in her request for injunctive relief. Although neither set of defendants specifically moves to dismiss these claims, the Court notes that, for the purposes of filing an amended complaint, the constitutionality of the provisions has been upheld by the California Supreme Court. In *Thorn v. Superior Court*, 1 Cal. 3d 666(1970), the Court held that the involuntary treatment of patients pursuant to Section 5150 and 5250 is valid provided suitable safeguards are in place to protect the rights of such patients, including the right to counsel and to seek release on habeas corpus. The Court finds that Plaintiff's facial constitutional challenge to these sections is unpersuasive.

**5.     Defendant Troy Williams.**

Plaintiff sues Tory Williams, the Director of Risk Management of San Francisco General Hospital, and names him in the eighth, eleventh, twelfth, thirteenth, twentieth and twenty-second causes of action. All of the factual allegations with regard to defendant Williams' involvement in the underlying facts giving rise to these causes of action are entirely conclusory. "Conclusory allegations of law and unwarranted inference are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level..." *Twombly*, 550 U.S. at 556 (citations omitted).

With regard to all six causes of action against defendant Williams, Plaintiff makes only conclusory factual allegations. In the eighth cause of action for false imprisonment/arrest, Plaintiff makes the conclusory statement that Williams unlawfully detained her at San Francisco General Hospital, but alleges no facts to support such a conclusion. In the eleventh and twelfth causes of action for intentional infliction of emotional distress and negligent infliction of

13

emotional distress, Plaintiff alleges in a conclusory fashion that Williams engaged in unreasonable conduct, along with all of the other named defendants. Again, there are no facts to support the conclusion that Williams was involved in any such conduct. With regard to the thirteenth cause of action for detention in violation of the LPS Act, Plaintiff alleges that defendants, including Williams, improperly evaluated or failed to evaluate her or provide her with due process in the course of her detention. Again, there are no facts alleged indicating Williams' involvement with this conduct. With regard to the twentieth cause of action for conspiracy to violate Section 1983, Plaintiff fails to allege any facts to support the conclusion that Williams was aware of or ratified any of the conduct that constituted the alleged deprivation of Plaintiff's rights. *See Redman*, 942 F.2d at 1446 (holding that a supervisor is liable if he personally participated in the constitutional deprivation or there is a sufficient causal connection between the supervisor's conduct and the constitutional violation). Plaintiff further fails to allege any facts indicating that Williams acted outside the course and scope of his employment. From the allegations of the complaint, it appears that Williams merely carried out his duties as the City's risk manager. Lastly, with regard to the twenty-second cause of action for negligence, Plaintiff fails to allege that Williams owed her any duty under California law. (*See infra* n.2.)

Based on the allegations in the Third Amended Complaint, the Court finds that Plaintiff fails to state a cause of action against defendant Williams. Because the Court has permitted Plaintiff to amend her complaint to add Williams, the Court grants the motion to dismiss as to defendant Williams without leave to amend.

## CONCLUSION

Accordingly, the Court GRANTS the Regents Defendants' motion to dismiss without leave to amend. The Court GRANTS IN PART AND DENIES IN PART the City Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: May 8, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE