IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL COTTERILL, | |
| Plaintiff, | No. C 08-02295 JSW |
| v. | |
| SF CITY AND COUNTY, ET AL., | **ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Now before the Court is the motion for summary judgment filed by the City and County of San Francisco Defendants (collectively "City Defendants"). The Court finds the motion appropriate for decision without oral argument. N.D. Civ. L.R. 7-1(b). Therefore, the hearing date of October 23, 2009 is HEREBY VACATED. The case management conference is also vacated. Having considered the parties' pleadings, relevant legal authority, for the reasons set forth in the remainder of this Order, the Court GRANTS the City Defendants' motion for summary judgment.

The Court finds the conduct of Plaintiff's counsel throughout the prosecution of this case to have been reprehensible. Mr. Haynes has been sanctioned for discovery abuses and has been repeatedly late in filing his submissions in this matter and the opposition to the motion for summary judgment was inexcusably late and filed only as a result of this Court's issuance of an order to show cause why the case should not be dismissed for failure to prosecute. Counsel's conduct and submissions have been consistently dilatory, rambling, and legally deficient. In

addition, counsel's oversized opposition to the pending motion is almost incomprehensible. However, because it is important to resolve this matter on the merits, the Court will take as submitted the fully-briefed motion for summary judgment and grant it. On this basis, the Court dismisses the case without leave to amend.

**BACKGROUND**

This is an action brought by Plaintiff, Cheryl Cotterill, for alleged violations of her civil rights relating to her detention and treatment pursuant to section 5150 of the California Welfare and Institutions Code ("Section 5150") in July 2006.

Plaintiff began taking Desoxyn, a prescription methamphetamine, when she was diagnosed with Attention Deficit Hyperactivity Disorder by her treating psychiatrist. (Declaration of James F. Hannawalt ("Hannawalt Decl."), Ex. B (Plaintiff deposition) at 138:8-25; 258:4-17.) In the Spring of 2006, short on money, Plaintiff stopped taking the prescription for a number of months. (*Id.* at 258:4-7.) Then, on July 28, 2006, two days before the detention that gave rise to this case, Plaintiff re-introduced the prescription methamphetamine into her system. (*Id.* at 293:16-294:11.) On July 29 and July 30, 2006, after working many hours on a project on her computer, Plaintiff encountered problems printing. (*Id.* at 264:1-18.) On the evening of July 30, 2006, Plaintiff began screaming and throwing things around her apartment, including throwing her laptop computer on the floor, tipping over her table, pulling out all of the drawers on her desk, throwing her clothes on the floor and smashing two windows in her room with baskets thrown from her closet. (*Id.* at 263:2-17, 264:19-265:25.) According to Plaintiff's own testimony, the place "looked really awful. It looked overwhelmingly awful." (*Id*. at 265:18-19.)

Also, as a result of the commotion and noise in the building, and concerned about the potential violence, several neighbors called 911. (*Id.* at Ex. F (Alice Asher deposition) at 13:1-5, 16:23-19:16, 21:16-22:24; Ex. G (Stephen Campbell deposition) at 15:1-16:6; Ex. E (Christian Buss deposition) at 16:10-22, 19:18-26:20.) Each of the neighbors who called the police heard loud smashing sounds, saw broken glass and found Plaintiff to be defiant and in obvious distress. (*Id.*)

2

Responding to a series of 911 calls on the evening July 30, 2006, San Francisco Police Officers Matthew Mason and Hugh Hall entered the building and found the door to Plaintiff's apartment slightly ajar. (*Id.* at Ex. C (Matthew Mason deposition) at 42:8-14, 43:3-11; Ex. B (Plaintiff deposition) at 275:5-8.) Concerned for Plaintiff's safety, the officers conducted a protective sweep of the apartment to see if there was anyone inside and finding no one there and the apartment ransacked, the officers left, closing and locking the door behind them. (*Id.* at Ex. C at 43:3-18; Ex. B at 265:6-13, 275:21-23.) The officers drove around the block but were unable to locate Plaintiff who was out walking her dog. (*Id.* at Ex. C at 47:21-24; Declaration of Gregory M. Haynes, Ex. 1 (Plaintiff deposition) at 275:5-25.)

Again, after a few hours, Plaintiff's neighbors again called 911 in response to further screaming and crashing noises in her apartment. (Hannawalt Decl. at Ex. F at 16:23-17:22, 21:16-25, 35:5-40:4.) One of Plaintiff's neighbors, Ms. Asher, a psychiatric nurse, was concerned that Plaintiff was experiencing a psychotic break. (*Id.* at 10:16-11:2, 25:3-28:2.) Another neighbor heard smashing sounds, broken glass and screaming and called 911. (*Id.* at Ex. G at 15:1-16:6.) Another neighbor who was standing in the common area of the apartment building, asked Plaintiff if she needed help, but she was non-responsive to him. When another neighbor called out to her and asked if Plaintiff wanted to the police to come, she was threatening and abusive. (*Id.* at Ex. E at 24:22-25:15.) These neighbors also reported the incident by calling 911. (*Id.* at 26:3-27:21.)

Responding a second time to scene, Officers Mason and Hall returned to Plaintiff's apartment. (*Id.* at Ex. C at 55:1-16.) They were informed by Ms. Asher that she was concerned about Plaintiff's well-being. (*Id.* at Ex. F at 36:13-37:1, 41:22-42:8, 43:12-45:9.) The officers conducted a well-being check, stepped into the apartment and saw that it was in greater disarray than during their previous visit. (*Id*. at Ex. C at 64:16-21.) Plaintiff started to yell and scream and threatened to call the police on the police. (*Id.* at 62:22-63:6, 66:16-24, 71:13-22; Ex. D (Hugh Dean Hall deposition) at 60:3-15, 69:11-70:3; Ex. B at 307:6-309:23.) Plaintiff then shut down completely, was non-responsive and appeared to be catatonic. (*Id*. at Ex. C at 71:13-22, Ex. D at 60:3-15, 69:11-70:3.) Plaintiff herself testified that she was physically unable to

3

respond to the officers and that her mind went blank and she became mute. (*Id.* at Ex. B at 307:6-309:23, 310:3-19, 312:2-11.)

After surveying the scene, hearing reports from the neighbors and then witnessing Plaintiff turn from irrational screaming to suddenly catatonic, the police officers determined that Plaintiff was a danger to herself and they detained and transported her to the San Francisco General Hospital ("SFGH"), Psychiatric Emergency Services ("PES"). (Third Amended Complaint ("TAC") at 3:26, 4:21-22.) The police officers detained Plaintiff in accordance with Section 5150 which provides that peace officers may detain a person who is determined to be a danger to herself or others, for 72-hour involuntary treatment at a designated facility. Cal. Welf. & Inst. Code § 5150. (TAC at 4:15-17.) The Section 5150 application, completed by the police officers, indicated that Plaintiff was a danger to herself because she broke the windows of her apartment, refused to talk to the police officers, and went into a "catatonic state." (*Id.* at 5:3-9.) Plaintiff acknowledged that she said nothing further to the police officers while in the apartment, on the way to the hospital, or at the hospital. (Hannawalt Decl. at Ex. B at 312:2-11.)

Before leaving the apartment, Officer Mason checked visible surfaces in the apartment as well as Plaintiff's medicine cabinet, for prescription medications. (*Id.* at Ex. C at 168:21-169:7.) The officer testified that he was looking for medications to assist medical personnel at SFGH, who often ask for medications of people admitted for psychological evaluation. (*Id.* at 167:5-9, 170:3-16.) Pursuant to police procedure, Plaintiff was transported to the hospital in handcuffs. (*Id.* at 81:21-82:3.) Plaintiff testified that she has no recollection of experiencing any physical injury as a result of the officers' treatment and, although she had bruising in the area of her elbow, has no idea what caused it or when. (*Id.* at Ex. B at 296:5-25, 299:11-30:25.)

While on the medical ward, Plaintiff was unable or unwilling to cooperate with the doctors when they attempted to evaluate her psychiatric status. (*Id.* at Ex. J (Regina R. Graham, M.D. deposition) at 28:21-29:20.) According to her usual custom and practice, the treating psychiatrist provided Plaintiff with the advisements required under the Welfare and Institutions Code and certified Plaintiff for a 14-day hold under section 5250 ("Section 5250"). (*Id.* at

4

128:10-129:9, 133:1-24, 136:21-137:5.) Section 5250 of the California Welfare and Institutions Code provides that persons held under Section 5150 may, upon proper evaluation, be certified for intensive treatment for up to 14 days. Cal. Welf. & Inst. Code § 5250. (TAC at 6:14-19.)

Under Section 5250, a judicial officer reviews the physician's certification within four days of the certification. Review hearings at SFGH occur on Tuesdays and Fridays every week and August 1, 2006 was a Tuesday. (Hannawalt Decl. at Ex. S (Robert Bunker deposition) at 154:21-24.) Pursuant to hospital procedure and the practice and procedure of the San Francisco Public Defenders' office, Plaintiff was put on notice of the hearing, but due to her lack of communication with her doctors or advocates, Plaintiff was not able to attend. (Hannawalt Decl. at Ex. S at 37:2-14, 40:4-45:8; Ex. R (Julian Brian Saperstein deposition) at 75:1-24, 76:9-79:16.) When a patient is mute, her advocate cannot ascertain her wishes and cannot present evidence to contest certification for the 14-day involuntary hold. The hearing on August 1, 2006 took place without Plaintiff present and her public defender, Robert Bunker, opposed the continued hold in her absence. (*Id.* at Ex. S at 37:2-14, 40:4-45:8, 124:15-125:5.) Despite Mr. Bunker's opposition at the August 1 hearing, because of Plaintiff's inability or unwillingness to participate in the hearing, the Section 5250 hold remained in place. (*Id.* at Ex. S at 112:24-113:23, 119:3-120:12, 124:15-125:4; Ex. R at 42:23-43:1, 51:8-20; 54:7-17.)

On August 4, 2006, Plaintiff was admitted to the hospital's psychiatric department. (TAC at 7:13-16.) Plaintiff again met with the public defender investigator but refused to speak to anyone but her attorney. (*Id.* at Ex. B at 209:2-15.) On the afternoon of August 4, 2006, Plaintiff spoke with Mr. Bunker who advised her that she had had a certification review on August 1 and her next opportunity to petition the court for release would be on Thursday, August 10. (*Id.* at Ex. S at 50:25-52:25, 53:14-25.) Although she had no legal right to another certification review hearing, Mr. Bunker requested a motion for reconsideration on August 8, 2006. (*Id.* at Ex. R at 89:18-90:6.) On August 5, 2006, a UC Regents doctor indicated that Plaintiff required inpatient care because she was unorganized and unable to care for herself. (*Id*. at 7:25-28.)

5

1    On August 7, 2006, another examining doctor indicated that Plaintiff would be
2 discharged when she cooperated with the staff and was no longer a danger to herself. (*Id.* at
3 8:1-3.) The next day, on August 8, 2006, after a hearing was held concerning Plaintiff's Section
4 5250 hold, she was discharged from SFGH. (*Id.* at 8:14-17.) Instead of creating a new order,
5 the Commissioner wrote on the previous August 1 order to effect the release ruling.
6 (Hannawalt Decl. at Ex. R at 87:8-25; Ex. S at 226:6-227:9, 247:22-248:16.)

7    Plaintiff alleges that both the City Defendants and the Regents hospital staff violated her
8 rights under 42 U.S.C. Section 1983 ("Section 1983") for unreasonable search and seizure and
9 use of excessive force. She also brought numerous California state law claims, including claims
10 for violations of the California Welfare and Institutions Code, the California Civil Code,
11 battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of
12 emotional distress, and negligence.

13    On December 26, 2007, Plaintiff filed her original complaint in state court. Plaintiff
14 amended her complaint on December 28, 2007, and again on April 3, 2008. On May 2, 2008
15 the City Defendants removed the action to this Court. On August 19, 2008, this Court granted
16 Defendants' motion to dismiss certain causes of action and also granted the Regents' motion to
17 strike Plaintiff's prayer for punitive damages. On January 29, 2009, this Court granted in part
18 and denied in part Plaintiff's motion to file a third amended complaint. On May 8, 2009, this
19 Court granted in part and denied in part the City Defendants' and the Regents Defendants'
20 motions to dismiss. On August 25, 2009, this Court granted the Regents Defendants' motion to
21 dismiss.

22    Now, the only remaining defendants, the City Defendants, move for summary judgment
23 on all of Plaintiff's remaining claims. The Court shall address additional facts as necessary in
24 the remainder of this Order.

## ANALYSIS

**A.  Standards Applicable to Motions for Summary Judgment.**

27    A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ.
28 P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to

6

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Id.*  Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

**B.    Plaintiff Cannot Maintain a Claim for Unreasonable Seizure Against the Police Officers.**

In the first cause of action for unreasonable seizure in violation of 42 U.S.C. § 1983, Plaintiff contends that she was unlawfully detained against her will and without probable cause in violation of the fourth and fourteenth amendments to the United States Constitution.

7

"Peace officers, among others, have been entrusted with the duty, on probable cause, to take into custody any person who, 'as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled,' and to place such person in a county-designated facility for the initial 72-hour treatment and evaluation." *People v. Triplett*, 144 Cal. App. 3d 283, 286-87 (1983).

The legal standard for initiating a 72-hour hold is clear:

> To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer (or other authorized person) that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled. In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion. Each case must be decided on the facts and circumstances present to the [detaining person] at the time of the detention, and the [detaining person] is justified in taking into account the past conduct, character, and reputation of the detainee.

*Heater v. Southwood Psychiatric Center*, 42 Cal. App. 4th 1068, 1080 (1996) (citations omitted). A police officer is not tasked with making a medical diagnosis of a mental disorder, but rather it is sufficient that "the officer, as a lay person, can articulate behavioral symptoms of a mental disorder, either temporary or prolonged .... [M]ental disorder might be exhibited if a person's thought processes, as evidenced by words or action or emotional affect, are bizarre or inappropriate for the circumstances." *Triplett*, 144 Cal. App. 3d at 288.

This Court finds, based on the condition of Plaintiff's apartment, her erratic behavior in the police officers' presence, and the multiple observations of Plaintiff's neighbors, including a psychiatric nurse, that it was reasonable for the officers to infer that Plaintiff was at least temporarily disordered. The circumstances facing the officers – Plaintiff's screaming and yelling, throwing things in her apartment, breaking her windows, threatening to call the police on the police, and then suddenly becoming catatonic and non-responsive – were sufficient for the officers to come to the reasonable conclusion that Plaintiff was suffering from a mental disorder and that she was possibly a danger to herself. The facts more than justified the officers' emergency detention of Plaintiff. Because the officers had probable cause to detain Plaintiff pursuant to Section 5150, they did not violate Plaintiff's constitutional rights.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege "is an immunity from suit rather than a mere defense to liability." *Id.* As a result, the United States Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As a threshold question in resolving this issue on a motion to dismiss, the Court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right. *Id.* If the Court finds that the facts alleged demonstrate that there is a constitutional violation, the next inquiry is whether that right is clearly established. *Id.* "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. In other words, an officer is immune if he could have reasonably but mistakenly believed that his conduct did not violate a clearly established constitutional right. *Id.*

The first step of the inquiry requires that the Court adjudicate whether the facts as alleged demonstrate that there is a constitutional violation. The Court finds, based upon the undisputed facts presented in this matter, that the detention of Plaintiff was objectively reasonable under the circumstances:

> The test of objective reasonableness of official action has been formulated with the express purpose of according police officers latitude in exercising what are inescapably discretionary functions replete with close judgment calls. The immunity is to be applied with due respect for the perspective of police officers on the scene and not with the greater leisure and acquired wisdom of judicial hindsight. .... What matters is whether the officers acted reasonably upon the reports available to them and whether they undertook an objectively reasonable investigation with respect to that information in light of the exigent circumstances they faced.

*Gooden v. Howard County, Maryland*, 954 F.2d 960, 964-65 (4th Cir. 1992) (citations omitted). The officers had probable cause to take Plaintiff into custody for the purpose of detaining her subject to Section 5150 and there is nothing in the record to support the contention that the officers acted with anything less than reasonable good faith. Accordingly, the Court finds that they are immune from liability. *See Maag v. Wessler*, 944 F.2d 654, 657 (9th Cir. 1991) (finding that peace officers were immune from liability based on the fact that they had probable cause to take plaintiff into protective custody). As there was probable cause for the detention

9

1 and therefore no constitutional violation, Plaintiff may not maintain her first cause of action for
2 unreasonable seizure in violation of 42 U.S.C. § 1983 against the police officers.[1]

**C.     Plaintiff Cannot Maintain a Claim for Excessive Force Against the Police Officers.**

In the second cause of action for excessive force in violation of 42 U.S.C. § 1983, Plaintiff contends that the officers used excessive and unreasonable force against her person and her apartment by forcibly entering her home, restraining and handcuffing Plaintiff during transport and while at the hospital.

A law officer has the right to use such force as is necessary to effectuate a detention under the circumstances. *See Graham v. Conner*, 490 U.S. 386, 396-97 (1989). The only force used during the detention at issue here was to handcuff Plaintiff during transport and to restrain her at the hospital pending evaluation. There is no evidence in the record that Plaintiff sustained any injury from the officers' treatment. The bruise Plaintiff noticed after the full length of her hospital stay was not severe, was located at her elbow and not where the handcuffs would have been, and Plaintiff had no recollection how she actually sustained the bruise. (Hannawalt Decl. at Ex. B at 296:5-25, 299:11-30:25.) The Ninth Circuit has held that although reasonableness is normally a jury question, "defendants can still win on summary judgment if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir. 1995) (citing *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.1994); *see also Graham v. Connor,* 490 U.S. 386, 396-97 (1989)). The Court finds that, according to the undisputed facts in the record, the officers did not use excessive force to restrain or transport Plaintiff. Handcuffing Plaintiff for the purpose of effecting the detention and restraining her temporarily pending transfer to hospital custody does not amount to excessive force.

---

[1] Plaintiff also contends that the officers conducted an unlawful search of her apartment incident to her detention. The Court finds that the officers properly searched the surfaces of the furniture and Plaintiff's medicine cabinet for possible medications which, as a matter of course, are requested by hospital staff during psychiatric detention. This search was reasonable and not constitutionally infirm. *See Triplett*, 144 Cal. App. 3d at 289.

10

**D.     Plaintiff Cannot Maintain a Claim Against the City or Chief Fong.**

As a threshold matter, Plaintiff's claim against the City must be limited to ratification, if any, of the alleged unreasonable seizure or excessive force claims.  A municipality may not be held liable under Section 1983 where no injury or constitutional violation has occurred. *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).  The Court has already concluded that Plaintiff cannot establish a constitutional violation based on her alleged detention without probable cause or excessive force claims, and thus, Plaintiff's *Monell* claim cannot be premised on these alleged underlying allegations.

Plaintiff attempts to make a claim that the Regents doctors and staff are agents of the City and are liable under some theory of *respondeat superior*.  First, the evidence in the record before this Court indicates that the employees at SFGH are employees of the University of California Regents and not the City and County of San Francisco.  (*See* Troy Williams Declaration at ¶¶ 4-5.)  Regardless of evidence of agency, this Court has found that the care rendered to Plaintiff while in the hospital does not subject those dismissed defendants to any liability.  Therefore, Plaintiff may not maintain any of her claims for professional negligence, negligence and negligent infliction of emotional distress against the physicians at the Regents and those claims are barred as against the City Defendants.

Lastly, Plaintiff appears to be making a claims against the City and Chief Fong based on the San Francisco Police Department's Section 5150 training.  Because Plaintiff is unable to maintain a claim for violation of her constitutional rights by the officers, a *Monell* claim regarding the officers' training fails even before reaching an assessment of the police department's policies and training.  However, the evidence in the record demonstrates that all officers receive training in 5150 detentions, in compliance with California state law. (Declaration of Kelly Dunn; Hannawalt Decl. at Ex. H (Kelly Dunn deposition) at 16:8-18:23; Hannawalt Decl. on Reply, Ex. U (Kelly Dunn deposition) at 25:6-26:13, 43:10-14, 112:14-25.)

**E.     Plaintiff Cannot Maintain Claims Against Public Defender Defendants.**

This Court has previously dismissed all claims against defendant Robert Bunker with the exception of a section 1983 conspiracy claim.  The Court could not, without evidence,

1  dismiss the claims that Plaintiff made regarding an alleged agreement to deprive Plaintiff of her
2  constitutional rights.  However, after the parties were able to take discovery, it is clear that there
3  is not a scintilla of evidence that Mr. Bunker conspired to deprive Plaintiff of her rights.  To the
4  contrary, the evidence is clear that Mr. Bunker diligently represented Plaintiff to the best of his
5  ability considering her unwillingness or inability to communicate with him or her other care-
6  takers.  In light of Plaintiff's muteness, Mr. Bunker opposed continued confinement at the
7  August 1 hearing and promptly secured her release by requesting a second probable cause
8  hearing on August 8.  There is simply no evidence whatsoever that Mr. Bunker conspired with
9  anyone to deprive Plaintiff of her constitutional rights.
10         Plaintiff also alleges that Jeff Adachi, San Francisco's elected Public Defender who is
11  not alleged to have had any personal involvement in this matter, is liable for having
12  implemented deficient policies and training in the Public Defender's Office.  Plaintiff claims
13  that the Office "does not require that its attorney [sic] to document the file concerning
14  continuances and the reason for such continues [sic], what occurred at the hearing and related
15  follow up documents regarding the hearing, as well as contact with the attorney."  (TAC at
16  11:20-24.)  As a preliminary matter, there is no liability for the type of administrative
17  negligence Plaintiff alleges.  *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981).  Second,
18  even if such a claim were legally cognizable, Plaintiff has submitted no evidence to support it.
19  The evidence submitted indicates that policies and training of the Public Defender's Office were
20  in full compliance with state law.  (*See* Declaration of Jeff Adachi at ¶¶ 4-8.)

21  **F.     Plaintiff Cannot Maintain State Law Claims.**

22         Because the Court has found that Plaintiff's detention was lawful and did not abrogate
23  Plaintiff's constitutional rights, the officers are immune from liability under state law for any
24  alleged injury resulting from the decision to place her on an involuntary psychiatric hold at the
25  hospital.  *See* Cal. Gov't Code § 856(a)(1) ("Neither a public entity nor a public employee
26  acting within the scope of his employment is liable for any injury resulting from determining in
27  accordance with any applicable enactment ... whether to confine a person for mental illness or
28  addiction.")  Similarly, under California law, the finding of probable cause for the detention

12

bars potential liability for claims related to the detention. *See* Cal. Penal Code § 836.5(b) (barring liability "arising out of any arrest that is lawful or that the public officer or employee, at the time of the arrest, had reasonable cause to believe was lawful.")

Plaintiff's claim for intentional infliction of emotional distress cannot withstand summary judgment as the Court has found that the officers acted properly under the circumstances. *See Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (intentional infliction of emotional distress result from "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress.") There is no evidence in the record that defendants acted outrageously with the intent to cause harm or reckless disregard of the probability that their conduct might cause emotional distress. Quite the contrary, it may have been in dereliction of duty if the police officers had left Plaintiff unattended and without medical evaluation. *See Triplett*, 144 Cal. App. 3d at 288.

In the same vein, Plaintiff cannot maintain her claims for violation of California Civil Code sections 51 and 51.7 which require a showing a discriminatory motive. There is not a scintilla of evidence in the record that Plaintiff was treated differently from any other person suffering psychosis and a potential heart attack who violently destroys her home, switches suddenly between irrational screaming to catatonic silence in the middle of a police investigation, and after admission to the hospital, is unable or unwilling to engage with patient advocates to secure her release.

Similarly, Plaintiff cannot maintain a cause of action under California Civil Code section 52.1 which prohibits conduct that "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." The record does not support such a claim as the officers had probable cause to detain Plaintiff, they did not use excessive force in effectuating the detention and there is no evidence of threats, intimidation or coercion coupled with an interference of a constitutional right. *See Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (holding that a violation of section 52.1 requires "an attempted or completed act of

interference with a legal right, accompanied by a form of coercion.") There is no evidence either of interference with a legal right or threats of coercion. Accordingly, this claim fails as well.

Because all of Plaintiff's claims have been dismissed either in previous orders on various defendants' motions to dismiss and the residual claims are dismissed by virtue of this order granting summary judgment for the remaining defendants, the Court finds that Plaintiff is not entitled to injunctive or declaratory relief. The Court has already held in its order dated May 8, 2009 granting in part and denying in part the City Defendants' motion to dismiss, that the California Supreme Court found that the involuntary treatment of patients pursuant to Section 5150 and 5250 is valid provided suitable safeguards are in place to protect the rights of such patients, including the right to counsel and to seek release on habeas corpus. *See Thorn v. Superior Court*, 1 Cal. 3d 666 (1970). Again, the Court finds that Plaintiff's facial constitutional challenge to these sections is unpersuasive and denies Plaintiff's request for declaratory relief.

## CONCLUSION

For the reasons stated, the Court GRANTS the City Defendants' motion for summary judgment. A separate judgment shall issue. The case is dismissed and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:   October 20, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE