United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Cheryl Cotterill,

        Plaintiff,

    v.

City and County of San Francisco, et al.

        Defendants.

_____/

No. C 08-2295 JSW (JL)

REPORT AND RECOMMENDATION RE DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES AND EXPERT COSTS (Dkt #s 226, 230); and PLAINTIFF'S MOTION TO REVIEW AND VACATE TAXING OF COSTS (Dkt # 251)

**I.      Introduction**

      Defendants City and County of San Francisco ("City Defendants") and the Regents of the University of California ("Regents Defendants") move for attorneys' fees and expert costs following judgment rendered in their favour in this matter.  Plaintiff Cheryl Cotterill moves to review and vacate taxing of costs.  Both matters were referred by the district court (Hon. Jeffrey S. White) pursuant to Civil Local Rule 72-1 (Docket # 255).  The Court heard the matter on January 27, 2010.  Attorney of record for Plaintiff was Gregory Haynes, Law Offices of Gregory M. Haynes, Esq.; Attorney for City Defendants was Scott Wiener, City Attorney's Office; Attorney for Regents Defendants was R. Wesley Pratt, Hassard Bonnington, LLP.  Plaintiff made it clear that she did not want Mr. Haynes to represent her and requested that she be allowed to speak on her own behalf, which the Court granted.

**United States District Court**
For the Northern District of California

1   The Court carefully considered the moving and opposing pleadings and the

2   arguments of counsel and Plaintiff, as well as the record in this case, and hereby issues its

3   Report and Recommendations.  The Court recommends that Plaintiff's motion to re-tax

4   costs be GRANTED.  The Court further recommends that City and Regents Defendants'

5   motions for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 be DENIED.  Lastly,

6   City Regents Defendants' motions for attorneys' fees and costs, pursuant to 28 U.S.C. §

7   1927, should be GRANTED and attorneys fees and costs awarded from November 6, 2008

8   to the present.

9       **II.     Factual Background**

10      Plaintiff Cheryl Cotterill filed suit alleging violations of her civil rights relating to her

11   detention and treatment in July 2006 at San Francisco General Hospital pursuant to

12   sections 5150 and 5250 of the California Welfare and Institutions Code.  This Court relies

13   on the factual findings of the district court as set forth in the Court's Order Granting City

14   Defendant's Motion for Summary Judgment (Dkt #220, ¶. 2-6), and recites them only as

15   necessary to understand the Court's disposition.

16      In their moving papers and at the hearing, Defendants directed the Court to consider

17   the deposition testimony of Alice Asher, on October 8, 2008, and Julian Sapirstein, on

18   November 5, 2008.  The testimony of these two witnesses is significant because it calls into

19   question the soundness of Plaintiff's counsel's judgment in relying solely on Plaintiff's

20   testimony concerning the facts of this case, and suggests that Plaintiff's counsel recklessly

21   litigated far beyond the merits of Plaintiff's case.  The Court reviewed both of the

22   depositions, and believes the following testimony is relevant to the disposition of

23   Defendants' motions.  Accordingly, the Court makes the following findings.

24      Ms. Asher is a Clinical Nurse Specialist (CNS) and focuses primarily on community

25   health, mental health issues, and HIV.  (See excerpts of Deposition of Alice Asher, October

26   8, 2008, Exhibit A to Pratt Declaration, Dkt #276, at 10:16-22; 10:21-11:2).  Ms. Asher

27   specializes in substance use and in mental illness.  (Id. at 34:15-17).  She works with

28

people on a daily basis who experience issues related to the use of methamphetamines. (Id. at 34:15 - 35:4).  At the hearing, Plaintiff's counsel argued that Ms. Asher was not a nurse at all, but failed to support this assertion with any credible evidence.  Moreover, Ms. Asher's credentials were unchallenged at her deposition.

On the night of July 30, 2006, Ms. Asher, who lived in the apartment unit directly above Plaintiff's apartment, heard a lot of yelling coming from Plaintiff's apartment.  (Id. at 17:9-23).  Ms. Asher thought two people were fighting.  (Id. 17:16-23).  As the yelling got louder, she heard the sound of glass shattering as a wooden piece of furniture was thrown out of Plaintiff's window into an atrium below.  (Id. at 12:9-19, 18:6-12, 20:1-16).  Ms. Asher suspected a domestic violence incident and called 911 (Id. at 21:19-25).  After making the call, Ms.  Asher went downstairs to find out what was happening.  (Id. at 22:14-24).  Plaintiff was standing outside of her apartment and looked "very disoriented."  (Id. at 25:6-7, 25:22).  Plaintiff's eyes "didn't really seem to register what was going on."  (Id. at 26:5-6).  Based on her expertise, Ms. Asher suspected a psychotic break or a methamphetamine-induced psychosis.  (Id. at 31:1-7, 33:10-15).  Ms. Asher is specifically trained in assessing whether a person is under the influence of drugs, including methamphetamine.  (Id. at 57:14-17).  After a brief interaction, Plaintiff went back to her apartment and closed the door. (Id. at 30:16-19).  After interacting with Plaintiff, Ms. Asher formed a clear impression that Plaintiff was a danger to herself.  (Id. at 62:4-8).  Some time passed, and when the noise and shouting continued, Ms. Asher called 911 a second time. (Id. at 35:7-9, *see also* 38:11-39:24 for a transcript of the 911 call).  Although the police had already been out to the apartment one time before, the dispatcher could hear Plaintiff yelling through the receiver and indicated she would send the police out a second time.  (Id. at 35:11-21).

When the police arrived, Joan Cotterill (Plaintiff's mother), tried to convince the police that "there were no problems and that everything was just fine," and told them they should just leave.  (Id. at 43:15-20, 44:11-22).  Ms. Asher felt compelled to intervene and told the police that she did not think everything was okay.  (Id. at 45:3-7).  Ms. Asher

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1   explained her background in psychiatric nursing and described what had been going on

2   that evening, including her earlier interaction with Plaintiff.  (Id. at 45:3-7, 11-14, 19-22).

3   During Ms. Asher's conversation with the police, Plaintiff was present, but looked

4   completely disoriented and dissociated (Id. at 46:10-13, 47:7-8).  After this brief interaction,

5   Alice returned to her apartment, shut her door, and the building got quiet again.  (Id. at

6   48:5-11).  Based on her impressions of Plaintiff on July 30, 2006, Ms. Asher believed that a

7   5150 detention of Plaintiff was appropriate at the time the police interacted with her.  (Id. at

8   50:17 - 51:7).

9           Julian Sapirstein testified on November 5, 2008 concerning Plaintiff's 5250

10  certification and ultimate release.   Judge Sapirstein has been a mental health hearing

11  officer for the City and County of San Francisco since 1997.  (See excerpts from Deposition

12  of Julian Sapirstein, November 5, 2008, Exhibit E to Pratt Declaration, Dkt #276, at 8:1-5;

13  12:10-11).   Counsel do not dispute the facts of Judge Sapirstein's testimony, but differ in

14  their understanding of its significance.  Judge Sapirstein explained the procedure for

15  certifying a person under section 5250 and, in particular, his role as a mental health hearing

16  officer.  (Id. at 22-26).  A mental health hearing officer makes the ultimate determination as

17  to whether the patient is going to remain committed in the hospital.  (Id. at 54:7-11).  On

18  August 1, 2006, Judge Sapirstein was on vacation and another hearing officer filled in for

19  him at the hospital.  (Id. at 26:19-23).  Based on his familiarity with Certification Review

20  Hearing documents (Id. Exhibit 2) and his review of Plaintiff's documentation, he concluded

21  that Plaintiff had received a probable cause hearing on August 1, 2006 where she was

22  represented by Public Defender Robert Bunker.  (Id. at 50:23-51:7).  The notation on the

23  documentation indicated that Plaintiff did not attend the hearing.  (Id. at 51:12-15).  He

24  explained that there are two circumstances under which a hearing officer conducts

25  hearings without the patient being present: (1) when the patient agrees to the hold (called a

26  "submit"); and (2) when the patient, in the public defender's estimation, is incapable of

27  participating in the hearing and incapable or unwilling to agree to the hold (called an

28

United States District Court
For the Northern District of California

1  "oppose and submit").  (Id. at 24: 12-25).   In an "oppose and submit" situation, the

2  physician is not present, but rather submits the case to the judge through the paperwork.

3  (Id. at 52:23-25).  By definition, "oppose and submit" means the patient is not present.  (Id.

4  at 25:6-7).  Judge Sapirstein has never issued an "oppose and submit" order without the

5  patient being represented by an attorney.  (Id. at 25:16-19).  On the probable cause

6  hearing schedule (Id., Exhibit 1), Judge Sapirstein explained that the "O&S, mute" notation

7  next to Plaintiff's name meant that she was in the "oppose and submit" category and was

8  not talking.  (Id. at 42:23-43:1).

9       Judge  Sapirstein explained that a patient has no right to be heard a second time

10  before a hearing officer.  (Id. at 57:6-7).  If a patient wants to challenge the certification

11  determination, she would need to file a petition for writ of habeas corpus and appear before

12  a Superior Court judge.  (Id. at 57:7-10).  In Plaintiff's case, however, Judge Sapirstein

13  agreed to a second hearing as a personal favor to Robert Bunker, the public defender

14  assigned to represent her.  (Id. at 57:11-25).  Mr. Bunker told Judge Sapirstein that Plaintiff

15  had been mute on August 1, 2006, but had since recovered her ability to speak and wanted

16  to have another hearing.  (Id.).  This is not something Judge Sapirstein has granted very

17  often.  (Id. at 58:9-11).  Judge Sapirstein explained that at this subsequent hearing he

18  modified the August 1, 2006 order to reflect that Plaintiff had another probable cause

19  hearing on August 8, 2006 where she was present and where he found no probable cause

20  to sustain her involuntary detention.  (Id. at 56:5-25).

21       **III.    Procedural Background**

22

23       Plaintiff Cheryl Cotterill ("Plaintiff") originally filed this lawsuit in state court on

24  December 26, 2007, against Defendants the City and County of San Francisco ("City

25  Defendants"), the Regents of the University of California ("Regents Defendants"), and

26  various individually named City and Regents Defendants.  City Defendants removed the

27  action to federal court on May 2, 2008.  The court disposed of a number of plaintiff's claims

28  through Defendants' dispositive motions.  (See Dkt #s 29, 134, 198.)   On October 20,

2009, finding no evidence to sustain Plaintiff's burden of proof, the court granted City Defendants' motion for summary judgment (Dkt # 220) and issued its judgment dismissing the case (Dkt #221).

On November 3, 2009, City Defendants and Regents Defendants filed motions for attorneys' fees and expert costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927. (Dkt #s 226 and 230).  On December 1, 2009, costs were taxed against Plaintiff in the amount of $26,065.17 for Regents Defendants and $31,643.77 for City Defendants (Dkt #s 249, 250).  On December 9, 2009, Plaintiff filed a motion to review and vacate taxing of costs in favor of defendants (Dkt # 251).  All three motions were heard on January 27, 2010 at 9:30 a.m.  Defendants argue that Plaintiff's lawsuit was frivolous from its inception, or at least by November 5, 2008, by which time two key depositions had taken place which should have made substantially clear to Plaintiff that her claims had no legal and factual legs to stand on.  Furthermore, they argue that Plaintiff's counsel was aggressive and uncooperative, resulting in their higher fees and costs.  Accordingly, they seek attorneys' fees, expert costs, and other expenses pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927.  In her motion, Plaintiff seeks to re-tax the costs which were taxed against her on December 1, 2009 (Dkt #s 249, 250) and reduce them to nothing.  She asserts that taxing costs against her would devastate her financially and have a chilling effect on future civil rights claims by other plaintiffs.

On February 4, 2010, following the January 27, 2010 hearing, Plaintiff filed Evidentiary Objections (Dkt #273).  The Court granted Defendants two weeks to file a rebuttal to Plaintiff's objections.  (Order, Dkt #274).  Defendants filed a supplemental briefing on February 23, 2010 (Dkt #275).

**IV.    ANALYSIS**

**A.    Plaintiff's Motion to Re-Tax**

Fed.R.Civ. P. 54(d)(1) provides that "costs other than attorneys' fees shall be

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

allowed as a matter of course to the prevailing party unless the court otherwise directs."
Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is
incumbent upon the losing party to demonstrate why the costs should not be awarded. *See
Stanley v. University of Southern California*,178 F.3d 1069, 1079 (9th Cir. 1999).

Plaintiff argues that imposing costs will leave her indigent and will have a chilling
effect on future meritorious civil rights cases.  The Ninth Circuit has approved refusing to
award costs to a prevailing party when the losing party has limited financial resources. *See
National Org. for Women v. Bank of Cal.,* 680 F.2d 1291, 1294 (9th Cir.1982); *see also
Wrighten v. Metropolitan Hosps., Inc.,* 726 F.2d 1346, 1358 (9th Cir.1984); *Moore v.
Hughes Helicopters, Inc.,* 708 F.2d 475, 486 (9th Cir.1983).  The amounts requested by
Defendants are quite high ($31,643.77 for City Defendants and $29,065.17 for Regents
Defendants).  The court is sympathetic to Plaintiff's limited financial resources.  Plaintiff has
sufficiently demonstrated that she is incapable of paying Defendants' costs at present. (See
Exhibit D-I of Plaintiff's Reply to City Defendants' Opposition Vacate taxation of Costs, Dkt
# 269).

Plaintiff's claim that awarding costs will have a chilling effect on future civil rights
claims rests on her opinion of the strength of her case.  A district court must consider the
potential chilling effect of cost awards on civil rights claims. *Stanley v. University of
Southern California*, 178 F.3d 1069, 1079 (9th Cir. 1999), cert. den. at 528 U.S. 1022.  This
does not mean, however, that prevailing defendants are precluded from recovering costs in
civil rights actions. *Association of Mexican-American Educators v. State of California*, 231
F.3d 572, 593 (9th Cir. 2000).  Importantly, a weak or frivolous civil rights claim does not
receive the same protection from costs as a viable but ultimately failed civil rights claim. *Id.*
Plaintiff made serious allegations concerning her arrest and detention following her
medication overdose.  Once evidence surfaced demonstrating these allegations lacked
factual and legal support, her attorney should have advised her accordingly.  Instead, he
continued to litigate, putting Plaintiff at risk of incurring financial liability for costs.  Awarding
costs to Defendants under these circumstances does not strike the Court as an equitable

United States District Court

For the Northern District of California

solution.  Plaintiff should not have to pay for counsel's lack of sound judgment.  The Court

therefore recommends that Plaintiff's motion to re-tax be GRANTED.

### B.    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988

As the prevailing parties,[1] City Defendants and Regents Defendants request

attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  A court may award attorney's fees

to a prevailing civil rights defendant if the court finds that the plaintiff's action was "frivolous,

unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became

so." *Hughes v. Rowe*, 449 U.S. 5, 15, (1980) (per curiam) (quoting *Christiansburg Garment

Co. v. EEOC*, 434 U.S. 412, 422 (1978)).  "An action becomes frivolous when the result

appears obvious or the arguments are wholly without merit." *Galen v. County of Los

Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (citing *Christiansburg*, 434 U.S. at 422).  A

defendant can recover fees if the plaintiff runs afoul of this standard at any point in the

litigation. See *Christianburg*, 434 U.S. at 422.  A court must "resist the understandable

temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not

ultimately prevail, his action must have been unreasonable or without foundation."

*Christianburg*, 434 U.S. at 421-22.  The denial of fee awards to defendants following a

grant of a motion to dismiss or summary judgment in favor of defendants is common. See,

e.g., *Gibson v. Office of Att'y Gen., State of Cal.*, 561 F.3d 920, 929 (9th Cir. 2009);

*Summers v. Teichart & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997); *Parks School of

Business, Inc. v. Symington*, 51 F.3d 1480, 1489 (9th Cir. 1995).  Importantly, a plaintiff's

"inability to defeat summary judgment does not mean that [the] claims were groundless at

the outset." *Karam v. City of Burbank*, 352 F.3d 1188, 1196 (9th Cir. 2003) (citing *Mitchell

v. Office of Los Angeles County*, 805 F.2d 844, 847 (9th Cir. 1986)).

---

[1] The record reflects and caselaw confirms that Defendants are prevailing parties in this
matter. City defendants prevailed on the merits of their case in their summary judgment
motion. See *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S.
598, 603 (2001).  Regents Defendants prevailed on the affirmative defense of Eleventh
Amendment immunity, which constitutes a resolution on the merits because it rests on a
waivable affirmative defense.  See *Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006;
*Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir. 1995).

United States District Court

For the Northern District of California

1    The court has great discretion to determine whether to award fees under § 1988,

2    and must be ever mindful of Congress' policy of promoting vigorous prosecution of civil

3    rights violations under § 1983.  *Hughes*, 449 U.S. at 14-15.   While an award of attorney's

4    fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of 42 U.S.C. §

5    1988, the award should not subject the plaintiff to financial ruin. *Miller v. L.A. County Bd. of*

6    *Educ.,* 827 F.2d 617, 621 (9th Cir. 1987).  Although the Court may not deny fees based

7    *solely* on this factor, it may consider Plaintiffs' financial condition as one of several factors

8    in determining whether to award fees.  *Miller*, 827 F.2d at 621, n. 5; see also, *Patton v.*

9    *County of Kings*, 857 F.2d 1379, 1382 (9th Cir. 1988).

10    The Court finds, as explained in greater detail below, that until November 5, 2008,

11    there were material disputed facts that justified Plaintiff's continuing the litigation.  After this

12    date, however, it should have been sufficiently obvious to Plaintiff by her counsel that her

13    claims lacked legal or factual basis.  At this point, Plaintiff's claims were unreasonable or

14    frivolous, satisfying the *Christianburg* standard*.  Christianburg*, 434 U.S. at 422.

15    Notwithstanding this conclusion, the Court finds that the fault lies more with Plaintiff's

16    counsel than with Plaintiff herself.  Granting such extraordinary relief under 42 U.S.C. §

17    1988 would leave Plaintiff penniless and deter the wrong person.  In opposing Defendant's

18    motions for attorneys' fees, Plaintiff has presented compelling evidence, by way of

19    declaration and other documentary evidence, establishing her inability to pay any of

20    Defendants' attorneys' fees and costs.  (See Plaintiff's Reply to City Defendants'

21    Opposition to Vacation Taxation of Costs, Dkt # 269).  Moreover, she states that she let her

22    attorney, Mr. Haynes, determine the strategy of the case because she trusted him and was

23    busy with law school.  (See Plaintiff's Reply to Regents Defendants' Opposition to Vacate

24    Taxation of Costs, Dkt #268).  Mr. Haynes never warned her that she could be held liable

25    for Defendants' fees and costs; he merely told her at the outset that he thought she had a

26    good case.  (See Plaintiff's Declaration in Opposition to Defendants' Motion for Attorneys'

27    Fees and Costs, Dkt # 256 at ¶ 4).  After reading the court's summary judgment order, and

28    realizing Mr. Haynes was pursuing his own agenda, she withdrew the appeal he had filed

**United States District Court**
For the Northern District of California

1    notwithstanding her express instructions to the contrary.  (Dkt # 256 at ¶ 4).  Ordering

2    Plaintiff to cover fees and costs accumulated primarily as a result of her attorney's

3    misguided strategy and poor lawyering would have scant deterrence value.  To the

4    contrary, such harsh measures might even discourage the public from putting their trust in

5    any member of the legal profession.  For these reasons, the Court recommends that

6    Defendants' motions for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 be

7    DENIED.

8         **C.      Attorneys' fees and costs pursuant to 28 U.S.C. § 1927**

9         City Defendants and Regents Defendants also seek attorneys' fees and costs

10   pursuant to 28 U.S.C. § 1927.  Sanctions pursuant to section 1927 must be supported by a

11   finding of recklessness or subjective bad faith. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091,

12   1107 (9th Cir. 2002) (applying *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001)).  "Bad faith"

13   actions by counsel are assessed under a subjective standard and includes "a broad range

14   of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991-992 (9th Cir. 2001).

15   Importantly, § 1927 authorizes the taxing of only excess costs incurred because of an

16   attorney's unreasonable conduct; it does not authorize imposition of sanctions to reimburse

17   a party for the ordinary costs of trial.  *U.S. v. Associated Convalescent Enterprises, Inc.*,

18   766 F.2d 1342, 1347 (9th Cir. 1985).  Sanctions may be justified under § 1927, even if the

19   conduct at issue has some merit.  *Lone Ranger Television, Inc. v. Program Radio Corp.*,

20   740 F.2d 718 (9th Cir. 1984); *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981).

21   Once counsel is or should be aware of the impropriety of his or her conduct, the costs,

22   expenses, and attorneys' fees for any subsequent proceedings may be considered to be

23   excess expenses and counsel may be required to personally pay them under § 1927.  See

24   e.g., *Campana v Muir*, 615 F.Supp. 871 (M.D. Pa 1985), aff'd 786 F.2d 188 (3rd Cir.

25   1986)(plaintiff's counsel required to satisfy all costs and legal fees incurred by the

26   defendants after counsel had actual notice that an absolute defense to the plaintiff's claims

27   would be raised).  An attorney's delays and failures to act warrant § 1927 sanctions only if

28

**United States District Court**
For the Northern District of California

they are so egregious as to "multiply" the proceedings.  *See West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519 (9th Cir. 1990).

The Ninth Circuit has addressed an attorney's bad faith and reckless behavior and upheld sanctions on a number of occasions.  In *United Foods & Commercial Workers Union, Local 197 v. Alpha Beta Co.*, 736 F.2d 1371, 1382-83 (9th Cir. 1984), the court held that evidence of delay tactics and inconsistent positions taken by an employer throughout a proceeding to compel arbitration was sufficient to support the trial court's exercising its discretion in awarding attorneys' fees to a union, on grounds of the employer's bad faith.  In *B.K.B. v. Maui Police Dep't* 276 F.3d 1091, 1106 (9th Cir. 2002), the district court imposed sanctions for attorneys' fees of $5,000 under § 1927 and another $5,000 under the court's inherent powers to compensate Plaintiff for the emotional damage caused by defense counsel's violation of Rule 412 at trial.  The Ninth Circuit concluded that the award of fees was appropriate because defense counsel's misconduct vexatiously and unreasonably multiplied the proceedings by prompting the motion for a mistrial and the subsequent imposition of sanctions.  *Id.* at 1108.  In *West Coast Theater Corp.*, 897 F.2d at 1528 (9th Cir. 1990) the court affirmed § 1927 sanctions where counsel failed to provide any evidence of discriminatory intent, failed to answer interrogatories, failed to respond to a document demand, and failed to drop the case after improperly serving a defendant.  The record clearly indicated that Plaintiff's counsel recklessly proceeded with the litigation despite a complete lack of factual support or proper service of his opponent.  *Id.*  By contrast, in *Rodriguez v. United States*, 542 F.3d 704 (9th Cir. 2008), the Ninth Circuit did not find bad faith in the government's assertion of the defense of consent because it  was supported by competent testimony of three officers.  *Id.* at 710.  Because evidence in the record strongly contradicted the defense of privilege, however, the court did not err in finding bad faith as to the assertion of this defense.  *Id.* at 711-712.

> **1.      Plaintiff's counsel's conduct throughout the litigation was vexatious.**

An attorney's conduct may be unreasonable and vexatious if its sole purpose was to

United States District Court

For the Northern District of California

1   harass the opposing party or needlessly increase the cost of litigation.[2]  Sanctions are often

2   imposed for conduct that is undertaken to delay the conclusion of the proceedings.[3]  The

3   record in this case reflects that Plaintiff's counsel's litigation tactics proliferated proceedings

4   by misstating the law and facts that were known to him.  Moreover, he continued to litigate

5   Plaintiff's claims after November 5, 2008, when it was abundantly clear that Plaintiff's

6   claims lacked legal and factual support which, amounts to recklessness.

7           In this matter, the district court did not make an express finding that counsel's

8   conduct constituted or was tantamount to bad faith.  The court did, however, frequently

9   admonish Plaintiff's counsel for failing to comply with standing orders and rulings, and on

10  many occasions expressed displeasure about having to settle numerous petty discovery

11  disputes (See Dkt #s 79, 96, and 131).  In its most recent order granting City Defendants'

12  motion for summary judgment, the court expressed exasperation with Plaintiff's counsel:

13          [T]he conduct of Plaintiff's counsel throughout the prosecution of this case
14          [has] been reprehensible.  Mr. Haynes has been sanctioned for discovery
            abuses and has been repeatedly late in filing his submissions in this
15          matter and the opposition to the motion for summary judgment was
            inexcusably late and filed only as a result of this court's issuance of an
16          order to show cause why the case should not be dismissed for failure to
            prosecute.  Counsel's conduct and submissions have been consistently
17          dilatory, rambling, and legally deficient.

18  (Order Granting City Defendants' Motion for Summary Judgment, Dkt # 220, at 1).  Both

19  City Defendants and Regents Defendants made clear in their papers and in their testimony

20  _____

21      [2]See, e.g., *Limerick v. Greenwald*, 749 F.2d 97 (1st Cir. 1984)(sanctions were imposed
    against attorney whose course of conduct passed border of advocacy and entered realm of
22  harassment); *Steinle v. Warren*, 765 F.2d 95 (7th Cir. 1985)(attorney was mistaken in his belief
    that duty to client extended to commencing frivolous action intended to harass); *Lone Ranger*
23  *Television Inc v Program Radio Corp*, 740 F2d 718 (9th Cir. 1984) [court found that defense
    counsel intended to harass plaintiff by advancing arguments previously raised]; Vegetable
24  Kingdom Inc v Katzen, 653 F.Supp 917 (ND NY 1987); Kendrick v Zanides, 609 FSupp 1162
    (N.D. Cal 1985) (court imposed § 1927 sanctions, stating that only reasonable conclusion was
25  that plaintiff and his attorney filed amended complaint to subject defendants to personal
    harassment); *Wold v. Minerals Engineering Co*, 575 F.Supp 166 (D. Colo 1983).

26      [3]See, e.g., *United States v. Potamkin Cadillac Corp*, 697 F.2d 491 (2nd Cir.1983) cert.
27  den. 462 U.S. 1144 (1983); United States v. Blodgett, 709 F.2d 608 (9th Cir. 1983) (filing
    appeal solely for purpose of delay constitutes bad faith); In re Interstate Steel Setters Inc, 65
28  Bankr Rep 312 (Bankr Ct. N.D. Ill 1986)(standard for determining when sanctions are
    appropriate under § 1927 is whether attorney's conduct unjustifiably delayed case; unjustified
    delay is present when attorney files patently frivolous pleading).

**United States District Court**
For the Northern District of California

1   at the hearing that Plaintiff's counsel's behaviour was objectionable and at times offensive.

2   (See e.g.,  Declaration of Scott Wiener in Support of City Defendants' Motion for Attorneys'

3   Fees and Costs, ¶. 5-8, Dkt #231). Communicating with Plaintiff's counsel was challenging,

4   to say the least, and led Regents Defendants to file two Motions for administrative relief,

5   one requesting relief from having to file joint pleadings with Plaintiff (Dkt #39) and the other

6   requesting to be relieved of the requirement to meet and confer in person while recorded

7   (Dkt #74).  Plaintiff's counsel interacted with opposing counsel in an unprofessional

8   manner, and frequently threatened Rule 11 sanctions against defense counsel without

9   articulating a specific basis for doing so.  (See Exhibits to Declaration of Wesley R. Pratt in

10   Support of Motion for Administrative Relief, Dkt #40).  City Defendants estimated

11   (conservatively) that they incurred attorneys' fees in the amount of $21,600 as a result of

12   Plaintiff's counsel's bad-faith conduct during the litigation, and offered this amount as one

13   of three alternatives for the Court to consider awarding.

14          **2.      Plaintiff's counsel made numerous misstatements of law and fact and
     ignored court orders, prolonging the proceedings and wasting opposing counsels'**
15   **and the court's time.**

16

17          In addition to behaving badly, Plaintiff's counsel made numerous misstatements of

18   law and fact which unnecessarily multiplied the proceedings.  A claim may lack a legal

19   basis where a necessary element of the claim cannot be established[4] or where an absolute

20   defense to the claim is clearly available.[5]  A claim may also lack color if it has no factual

21

22

23   _____

24          [4] See, e.g., *Sam & Mary Housing Corp v. New York State*, 632 F. Supp. 1448 (S.D. NY
     1986) (in order to maintain action under 42 U.S.C.A. § 1983, it was necessary to establish that
25   defendant was state actor; plaintiff failed to come forward with any artful arguments that
     defendant, merely by litigating in state court, was acting under color of state law).

26
          [5] See, e.g., *Campana v. Muir,* 615 FSupp 871 (M.D. Pa 1985), aff'd 786 F2d 188 (3rd
27   Cir. Pa 1986)(in action against district court judge alleging that statements in judicial opinion
     were libelous, court observed that under clear and unequivocal doctrine of judicial immunity,
28   judges are not liable in civil suits for their judicial acts; because defense of judicial immunity
     rendered plaintiff's claim without color, reasonable attorney, when put on notice of defense,
     would have advised his client to abandon claim).

basis.[6]  A claim may be found to lack a factual basis where the complaint contains only

conclusory allegations.[7]  Some of the more striking examples of Plaintiff's counsel's

misstatements of law and fact are set forth below:

- Plaintiff named Anne Braun, M.D. as a defendant, but improperly served the
  complaint on Andrew Braun, M.D., who was not a named defendant.  Plaintiff
  then threatened to seek a default judgment against Dr. Andrew Braun if he
  did not file a responsive pleading.  (See Defendants' Joint Case Management
  Conference Statement, Dkt #24, pp. 4, 7).

- On August 28, 2008, Regents Defendants filed an answer to plaintiff's
  complaint in which they admitted that Plaintiff's certification hearing took place
  on August 1, 2006 and was presided over by Judge Pro Tempore Stella
  Pantazis.  (Dkt #25, pp. 5-6).  Regents Defendants further admitted that
  Julian Sapirstein modified the August 1, 2006 order at a subsequent hearing
  on August 8, 2006 where Plaintiff was released from the 5250 hold.  (Id.).
  Despite this, Plaintiff stated in her Motion for Leave to File Third Amended
  Complaint that she was unaware that a hearing took place on August 1, 2006
  until the deposition of "Julian Spiraint" on October 10, 2008.   (Dkt #62, filed
  November 19, 2008).  Plaintiff further alleged that this information had been
  actively concealed from her. (Dkt #62, p. 4). The Court could find no evidence
  of such witness having been deposed on this date and assumes that Plaintiff

---

[6]E.g., *Indianapolis Colts v. Baltimore*, 775 F.2d 177 (7th Cir.1985). See, e.g., *Blair v. Shenandoah Women's Center Inc*, 757 F2d 1435 (4th Cir. W. Va 1985) (several defendants were sued without any explanation for basis of claim); *Steinberg v. St Regis/Sheraton Hotel*, 583 F.Supp 421 (S.D. NY 1984) (action under Age Discrimination in Employment Act; neither plaintiff was replaced by younger person); *Conley v. KFC Corp*, 622 F.Supp 767 (W.D. Ky 1985) (claim of retaliation by employer was filed after plaintiff had been promoted several times during four years following her charge of racial discrimination).

[7]See, e.g., *Blair v. Shenandoah Women's Center Inc*, 757 F.2d 1435 (4th Cir. W. Va 1985) (no allegations were made to support race discrimination claim); *Aller v. New York Board of Elections*, 586 F.Supp 603 (S.D. NY 1984)(complaint was almost entirely conclusory and completely devoid of factual particularity); *Stewart v. Chicago*, 622 F.Supp 35 (N.D. Ill 1985) (plaintiff alleged that policies of defendant proximately caused unlawful police conduct but pleaded no facts to support charges).

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

meant the November 5, 2008 deposition of Julian Sapirstein.  Clearly, Plaintiff had access to this information on August 28, 2008, long before the deposition of Mr. Sapirstein.

• Plaintiff's counsel continued to litigate claims against Regents Defendants despite clear Eleventh Amendment Immunity and explicit instructions from the court not to do so.  On August 19, 2008, the court granted Regents Defendants' motion to dismiss Plaintiff's federal law claims based upon an assertion of Eleventh Amendment immunity (See Order re Deft's first motion to dismiss, August 19, 2008, Dkt # 29).  Furthermore, by October 3, 2008, Regents Defendants confirmed they would be asserting Eleventh Amendment immunity as an affirmative defense to Plaintiff's state law claims.  (Joint Case Management Statement October 3, 2008, at 8, ¶ 11, Dkt # 47). In its August 19, 2008 Order, the court clearly stated that Eleventh Amendment immunity barred Plaintiff's claims for monetary relief against the individual defendants acting in their official capacity, and gave Plaintiff specific instructions that she must allege sufficient facts demonstrating that the Regents Physicians acted in their personal capacities in order to withstand a further motion to dismiss. (Dkt #29, ¶. 5-6).

• Following the court's August 19, 2008 order granting Regents Defendants' motion to dismiss (Dkt #29), Plaintiff filed a motion for leave to file motion for reconsideration.  The court denied Plaintiff's motion, noting that, contrary to Local Rule 7-9(c), Plaintiff sought to re-assert arguments that she had previously raised in her opposition to the motion.  (Order Denying Motion for Leave to File Motion for Reconsideration, Dkt #42).

• Plaintiff gave opposing counsel the run-around with respect to filing her third amended complaint, at first working collectively to stipulate to one new claim, then unilaterally filing a motion for leave to amend, forcing Defendants to incur additional fees in responding to Plaintiff's motion.  At the October 10,

2008 Case Management Conference, the Court ordered Plaintiff to circulate a proposed third amended complaint by October 30, 2008.  Plaintiff instead sent out a letter on October 30, 2008, proposing the addition of a single new cause of action.  When the parties struggled to agree on a stipulation regarding the language of the third amended complaint, Plaintiff's counsel filed a motion for leave to file a third amended complaint on November 19, 2008. (Dkt #68, ¶ 9-14; Dkt # 62).

• In her proposed Third Amended Complaint, Plaintiff sought to add four new defendants and four new claims for relief, including claims against the Regents and the Individual Physicians that previously were dismissed by the Court.  (Order Granting in Part and Denying in Part Plaintiff's Motion to File Third Amended complaint, Dkt #89, ¶. 2, 6). The court specifically instructed Plaintiff not to include the existing Third Claim for relief (Unreasonable Seizure) in her Third Amended Complaint (Dkt #89, p. 6), which order Plaintiff failed to observe.  (Third Amended Complaint, Dkt #98, p. 14).  The Court also instructed Plaintiff not to include *any* reference to the Regents or Individual Physicians in her Fourth, Fifth, Sixth, Ninth, Twelfth, and Seventeenth Claims for relief (Dkt #89, p. 6), which she also failed to do as to her Fourth and Ninth claims for relief.  In her Fourth claim for relief, Plaintiff alleged excessive force was used in "administering medication...while being unlawfully detained at the hospital and treat[ed] without consent," clearly a reference to the Regents Defendants. (Dkt #98, p. 15).  In Plaintiff's Ninth cause of action, Plaintiff did not specifically name Regents Defendants, but alleged negligence in providing medical care, providing unconsented medication, and unconsented treatment, again, clearly referencing Regents Defendants. (Dkt #98, p. 19), contrary to the court's guidance.

• Plaintiff moved to amend her complaint to add as a defendant Commissioner Sapirstein, who presided over her second probable cause hearing held on

1   August 8, 2006.  Commissioner Sapirstein was deposed two weeks before

2   Plaintiff moved to amend her complaint.  Nothing in Commissioner

3   Sapirstein's deposition suggested he acted outside the scope of his normal

4   judicial functions, in which case judicial immunity clearly applied.[8]

5   Accordingly, the court denied Plaintiff's motion to amend to add Mr. Sapirstein

6   as a defendant, unless she could allege additional facts demonstrating he

7   performed an act that was non judicial in nature. (Dkt #89, p. 6).

8   Notwithstanding the court's denial, Plaintiff added Commissioner Sapirstein

9   as a defendant in her Third Amended Complaint, simply referring to his

10  altering the certification document to reflect his subsequent order as a

11  "nonjudicial" act, despite the court's assessment of Commissioner

12  Sapirstein's actions, including the alteration, as entirely within the scope of

13  normal judicial functions. (Third Amended complaint, Dkt #98).

14  • In her proposed third amended complaint, Plaintiff tried to get around the

15  Court's earlier determination that her negligence claims were time-barred by

16  asserting that she did not discover the facts giving rise to the negligence

17  claim until September 2008 when she learned that a hearing was held on

18  August 1, 2006. (Third Amended Complaint, Dkt #98). This defies logic.  If

19  anything, having a hearing on August 1, 2006 would have suggested that the

20  hospital fully complied with due process by holding a hearing within four days

21  of the notice of certification.  Plaintiff was clearly put on notice of her potential

22  claims upon her release from the hospital on August 8, 2006.

23  • Plaintiff's counsel made a facial challenge to the constitutionality of California

24  Welfare and Institutions Code Sections 5150 and 5250, which have been long

25

26  [8] An act is considered "judicial" when it is a function normally performed by a judge and
the parties dealt with the judge in his judicial capacity. *See Stump*, 435 U.S. at 362; *see also*

27  *Franceschi v. Schwartz*, 57 F.3d 828, 830-31 (9th Cir. 1995) (holding that a municipal court
commissioner was immune from suit).  Absolute judicial immunity applies even where the

28  person exercising judicial functions is accused of acting maliciously or corruptly, *see Pierson
v. Ray*, 386 U.S. 547, 553-54 (1967), and despite the lack of judicial formalities, *see Stump v.
Sparkman*, 435 U.S. 349, 362 (1978).

ago upheld by the California Supreme Court.   In *Thorn v. Superior Court*, 1 Cal. 3d 666 (1970), the Court held that involuntary treatment of patients pursuant to Section 5150 and 5250 is valid provided suitable safeguards are in place to protect the rights of such patients, including the right to counsel and to seek release on habeas corpus.

- Plaintiff's counsel continued to assert that Mr. Bunker, the public defender, and his investigators never informed Plaintiff of the 5250 hearing on August 1, 2006, yet Plaintiff, at deposition, acknowledged that on the date of the notification she was so incoherent that she does not even know what happened for most of that day. (City Defendant's Motion for Attorney's Fees, Dkt #230, at p. 5).

- Plaintiff sought to depose three high-ranking officials, including Mayor Gavin Newsom (Dkt #65), as to whom the court denied Plaintiff's motion to compel because Plaintiff failed to demonstrate that these officials had particular knowledge that could not be obtained through other means.  (Dkt #66).  After the Court quashed Mayor Newsom's deposition, Plaintiff attempted to circumvent the court's denial by moving to compel answers to special interrogatories to Mayor Newsom (Dkt #128), which motion the court also denied, noting that, once again, Plaintiff had failed to show that the Mayor had personal knowledge about the matter or that the information could not be obtained through other means. (Dkt #131).

- Plaintiff unreasonably refused to submit to a psychological evaluation, despite having clearly put her psychological injury at issue, both in her claims for intentional and negligent infliction of emotional distress and based on the facts giving rise to the entire action. (See Order re Various Discovery Disputes, Dkt #96).

- Plaintiff refused to allow Defendants to take depositions of remote witnesses by video link despite clear authority for doing do under the Federal Rules of

Civil Procedure 30(b)(4).  The court found that Plaintiff's creation of this controversy was "frivolous and a waste of this Court's limited resources." (Order re Various Discovery Disputes, Dkt #96, at p. 2).

- Plaintiff's counsel filed a reply brief to Defendants' motion for summary judgment nearly three weeks late (Dkt #205), and only after the court issued an order to show cause why the case should not be dismissed. (Dkt #203).

- Mr. Haynes repeatedly forced defense counsel to spend significant amounts of time defending against irrelevant issues, most notably the "code red" policy[9] and the Mayor's purported policy on mentally ill homeless people, which issues did not even arguably relate to this case.  Despite the complete lack of evidence that the "code red" policy was in effect, and medical evidence indicating Plaintiff was experiencing a heart attack, Mr. Haynes asserted that because Plaintiff was taken from the psychiatric emergency to the medical emergency room, it must have been because of the code red policy.  Mr. Haynes took the position that this policy was unconstitutional. (See Declaration of Scott Wiener in Support of City Defendants' Motion for Attorney Fees and Expert Witness, Dkt # 231, at p. 7).

- Plaintiff's counsel  repeatedly stated that he would dismiss as defendants Officers Crudo, Hicks, and Davies and Sgt. Loew, but then never agreed to the filing of stipulations of dismissal.  After the Court had dismissed all claims against Troy Williams with prejudice, Mr. Haynes indicated that he would not agree to a stipulation dismissing the other officers unless Mr. Williams was included in the stipulation of dismissal.  As a result of this behavior by Mr. Haynes, Defendants were forced to file motions to get each of the numerous defendants out of the case.  ((See Declaration of Scott Wiener in Support of

---

[9] The "code red" policy goes into effect when San Francisco General Hospital's psychiatric emergency services is full and cannot accept more patients experiencing psychiatric emergencies, in which case patients are diverted to medical emergency rooms so that they have a place to go. (See Dkt. # 231, p. 8)

**United States District Court**
For the Northern District of California

1     City Defendants' Motion for Attorney Fees and Expert Witness, Dkt # 231, at

2     p. 6).

3         **3.    Plaintiff's counsel continued to litigate long after her claims clearly

4     lacked viability.**

5         Courts have imposed sanctions under 28 U.S.C.A. § 1927 for failing to dismiss a

6     claim when the party is unable to obtain sufficient facts to support the claim through

7     discovery. See, e.g., *Walter v. Fiorenzo*, 840 F.2d 427 (7th Cir.1988) (claim could not be

8     supported after four years of discovery).  Although an attorney may be entitled to rely on his

9     or her client for information when the action is commenced, continued reliance on client

10    information may be unjustified when discovery fails to reveal facts necessary to maintain

11    the claim.  In *Deretich v. City of St Francis*, 650 F.Supp 645, 648-649 (D. Minn. 1986), for

12    example, the court held that plaintiff's counsel multiplied the proceedings unreasonably and

13    vexatiously by pursuing litigation after it had clearly become frivolous.  The court stated that

14    counsel should have been fully alerted to the weakness of the claims when her client was

15    unable to articulate supportive facts at his deposition. *Id.*

16        November 5, 2008 was a crucial date in the prosecution of this case.  By this date,

17    the depositions of two key people had taken place: Alice Asher on October 8, 2008 and

18    Commissioner Julian Sapirstein on November 5, 2008.  The testimony of these two

19    witnesses should have made abundantly clear to Plaintiff's counsel that Plaintiff had no

20    viable claims.  Ms. Asher, a neighbor and psychiatric nurse, called 911 twice and testified in

21    detail at her deposition about Plaintiff's psychotic behavior, strongly supporting the officers'

22    decision to detain her under section 5150.  Once Ms. Asher testified, any arguable basis for

23    a claim relating to the original detention evaporated.  Julian Sapirstein was the mental

24    health hearing officer (a Superior Court Commissioner) who ultimately ordered Plaintiff's

25    release.  In his deposition, he testified about the chronology leading up to Plaintiff's release,

26    including her original hearing, the reasons for her detention, and so forth.  He interpreted

27    the documents relating to the detention and hearing.  Once Mr. Sapirstein testified, it was

28    abundantly clear that Plaintiff had received full due process and that her detention at the

1    hospital was valid.  A reasonable attorney would have concluded that the case was no

2    longer worth pursuing and would have seriously considered dismissing the case.

3         **4.      The Parties' Post-Hearing Submissions**

4         The Court reviewed Plaintiff's evidentiary objections, filed on February 4, 2010, and

5    Regents Defendants' supplemental briefing, filed on February 23, 2010, which is joined by

6    the City Defendants.  Plaintiff's evidentiary objections are unsupported by the record and

7    do little to sway the Court to rule in her (or her prior attorney's) favor.  If anything, her

8    objections do just the opposite and demonstrate that even without her attorney at the helm,

9    she continues to re-litigate claims that the court previously determined lacked merit.

10   Plaintiff alleges that Defendants misrepresent the record by stating she experienced a heart

11   attack.  (Plaintiff's Evidentiary Objections, p. 2).  This is itself a bold misrepresentation of

12   the factual record, and completely ignores Plaintiff's medical records and the testimony of

13   both Andrew Braun, M.D. and Jessica Fogler, M.D., who treated Plaintiff at the Emergency

14   Department of San Francisco General Hospital.  Both doctors testified that Plaintiff did

15   indeed suffer a heart attack.  (Defendants Supplemental Briefing, Dkt # 275, at ¶. 6-8,).

16   Moreover, the medical records reflect that Plaintiff had an abnormal EKG and elevated

17   laboratory troponin levels. (Dkt #275, at p. 8).  Dr. Fogler further explained that because of

18   Plaintiff's age and lack of pre-existing coronary artery disease, the most likely cause of the

19   myocardial infarction was amphetamine or methamphetamine use. (*Id.*).  Moreover, two of

20   Defendant's medical experts reviewed Plaintiff's medical records and confirmed the

21   Emergency Room diagnosis of a heart attack, most likely caused by methamphetamine

22   toxicity. (Dkt #275, Exhibits G, H, and I).  Plaintiff rejects this evidence but fails to present

23   credible expert testimony or other evidence in support of her theory that she was merely

24   suffering from an elevated heart rate.  Rather, she relies on her own interpretation of her

25   symptoms and the medical records, assisted by various medical references, including the

26   World Health Organization's criteria for diagnosing a heart attack.  (Plaintiff's Evidentiary

27   Objections, Dkt #273, at p. 3).  Plaintiff's evidentiary objection to Defendants' claim that she

28   had a heart attack is wholly unsupported by the record and cannot be sustained.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Plaintiff also objects to Defendants' claim that she overdosed on prescription

2   medication.  (Dkt #273, ¶. 4-5).  Plaintiff's objection is little more than a semantic

3   disagreement.  It is undisputed that Plaintiff had been off her medication for some time and

4   only restarted her prescription methamphetamines two days before being hospitalized on

5   July 30, 2006.   Defendants' expert Dr. John Mendelson explained that prescription

6   methamphetamine can be toxic in patients who have not developed a tolerance to its

7   effects.  (Dkt #275, Exhibit I, at p. 3). For this reason, methamphetamine doses are

8   increased slowly to decrease the risk of drug toxicity and allow patients to build up

9   tolerance to the effects of the drug.  *Id.*  Thus, even though Plaintiff ingested less than the

10   prescribed amount, it was effectively an overdose because her body had not built up

11   tolerance to the psychoactive effects of the drug.  (*Id.*).  Under these circumstances, use of

12   the term "overdose" is appropriate.

13   The Court finds that the parties' post-hearing submissions only further confirm the

14   Court's conclusion that Plaintiff through her attorney recklessly continued to litigate this

15   case long after it was abundantly clear that Plaintiff's claims lacked factual or legal support.

16   **5.   Conclusion re § 1927**

17   The purpose of 28 U.S.C.A. § 1927 is to limit abuse of judicial processes and to

18   discourage dilatory litigation practices. E.g., *Roadway Express Inc v. Piper*, 447 US 752

19   (1980).  Plaintiff's counsel engaged in unreasonable litigation that abused the judicial

20   process.  Under these circumstances, maintenance of this suit after November 5, 2008 was

21   reckless as a matter of law, and unreasonably and vexatiously multiplied the proceedings in

22   violation of § 1927.  As the Ninth Circuit has observed, "an attorney does not simply act as

23   an advocate for his client; he is also an officer of the court.  As such, an attorney has a duty

24   of good faith and candor in dealing with the judiciary." *United States v. Associated*

25   *Convalescent Enterprises, Inc.* 766 F.2d 1342, 1346 (9th Cir. 1985).  By November 5,

26   2008, Eleventh Amendment immunity as to Regents Defendants had been clearly

27   established.  Ms. Asher's testimony on October 8, 2008 and Julian Sapirstein's testimony

28   on November 5, 2008 made abundantly clear that Plaintiff's 5150 detention was

**United States District Court**
For the Northern District of California

1  appropriate and that she received due process at her 5250 certification hearings.  Yet,

2  instead of reconsidering the viability of his client's claims, Plaintiff's counsel continued to

3  rely solely upon Plaintiff's testimony concerning her detention and 5250 certification.  He

4  recklessly pursued totally groundless claims that no reasonable person would have

5  considered sufficient to bring to court, knowing full well that Plaintiff could be liable for the

6  cost of defense.  The Court does not go so far as to say this action was frivolous from its

7  inception.  Initially, there were factual disputes that warranted further discovery.  After

8  November 5, 2008, however, the facts and law of this case that were known to Plaintiff's

9  counsel did not warrant the public and private costs of a federal civil rights action.

**D.     Attorneys' fees and costs pursuant to the Court's inherent powers**

10  A  court's power over members of its bar, includes taxing opposing counsel's fees

11  against a party who has litigated in bad faith or who willfully abuses judicial process.

12  *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).  Conduct that is "tantamount to bad faith" is

13  sanctionable.  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980).  The Ninth Circuit

14  in *Fink* recently noted that "[s]anctions are available for a variety of types of willful actions,

15  including recklessness when combined with an additional factor such as frivolousness,

16  harassment, or an improper purpose." 239 F.3d at 994.  Reckless misstatements of law

17  and fact that are interlaced with such an additional factor are sanctionable under the court's

18  inherent power.  *Id.*  In *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1108 (9th Cir.

19  2002), the Ninth Circuit found that awarding compensatory damages to plaintiff under the

20  court's inherent powers was appropriate because defense counsel clearly acted in bad faith

21  and abused the judicial process by disingenuously circumventing Rule 412, resulting in

22  actual emotional and reputational harm to plaintiff.

23  Plaintiff's counsel's actions in this case, discussed *supra*, certainly suggest bad faith.

24  The court sought to resolve this case on the merits, despite being bogged down in a

25  quagmire of discovery disputes, countless motions for a broad spectrum of relief, rambling

26  over-length briefs, and unacceptable incivility.  The court's limited judicial resources have

27  been unnecessarily taxed by this case.  The real cost of Plaintiff's counsel's misconduct,

28

1  however, is borne by the clients and the legal profession as a whole.  Legitimate civil rights

2  plaintiffs pay part of the price for this intransigence, in the form of judges' and lawyers'

3  decreasing patience with plaintiffs and their attorneys.  As a result, the public itself

4  understandably loses respect for our entire system of justice.  Courts cannot jeopardize

5  public confidence in the legal profession by condoning such reckless attorney conduct.

6  **VI.    IMPOSITION OF SANCTIONS**

7  **A.    Due Process Concerns**

8

9  Before the court imposes sanctions, it must inquire whether doing so comports with

10  the Due Process Clause of the Fifth Amendment.  *Boddie v. Connecticut*, 401  U.S. 371,

11  379 (1971).  In this context, the Due Process Clause is satisfied where, prior to the

12  imposition of sanctions, the party affected has had adequate notice of the possibility of

13  sanctions and an opportunity to respond.  *Pan-Pacific & Low Ball Cable Television Co. v.*

14  *Pacific Union Co.*, 987 F.2d 594, 597 (9th Cir. 1993); *Hudson v. Moore Business Forms,*

15  *Inc.*, 898 F.2d 684, 686 (9th Cir. 1990).  The person to be sanctioned must have a chance

16  to demonstrate that his or her conduct was not taken recklessly or willfully, *FTC v. Alaska*

17  *Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986), and to explain why sanctions ought

18  not be imposed.  *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994), cert. denied, 514 U.S.

19  1035 (1995).  An opportunity to respond orally is not required; a full opportunity to respond

20  in writing is sufficient.  *Hudson*, 898 F.2d at 686.

21  Plaintiff's counsel was put on notice of the risk of sanctions pursuant to 28 U.S.C. §

22  1927 on November 3, 2009, when Defendants filed their Motions for Attorneys' Fees (Dkt

23  #s 226, 230).  These motions clearly set forth the fees and costs sought and the supporting

24  statutory authority.  Plaintiff's counsel had a meaningful opportunity to respond, both in

25  writing and orally.  He filed briefs opposing the motion for fees and sanctions (Dkt #s 259,

26  261), supported by his own affidavit (Dkt #260).  At the January 27, 2010 hearing, the Court

27  allowed Plaintiff's counsel ample opportunity to be heard.  While Plaintiff's counsel made a

28  colorable argument that Plaintiff's claims initially had some merit, he failed to address the

quality of Plaintiff's claims after November 5, 2008, and instead sought to litigate Plaintiff's

United States District Court

For the Northern District of California

claims anew.  None of counsel's arguments in his briefs or at the hearing, however, are sufficient to shield him from sanctions under Section 1927.  In sum, counsel had a chance to prepare a defense and to explain his reckless conduct.  The Court is convinced that Plaintiff's counsel has had all the process he is due.

### B.    Amount and Elements of Sanctions

Under 28 U.S.C. § 1927, if  the Court finds that the entire proceedings were affected by counsel's unreasonable and vexatious conduct, all of the nonoffending party's costs, expenses, and attorneys' fees may be assessed as § 1927 sanctions.  In the absence of such a finding, the Court may award only those costs, expenses, and attorney's fees directly attributable to the attorney to be sanctioned. See, e.g., *United States v. Associated Convalescent Enterprises Inc*, 766 F2d 1342 (9th Cir. 1985).  The Court finds that the entire proceedings in this case after November 5, 2008 resulted from Plaintiff's counsel's unreasonable and vexatious conduct and awards attorneys' fees and costs accordingly.

Calculation of attorney's fees begins with a lodestar figure.  The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995).  This lodestar figure can then be adjusted pursuant to the Kerr factors,[10] although a strong presumption exists that the lode-star represents a reasonable fee.  See generally *Jordan v. Multnomah County*, 815 F.2d 1258, 1262-63 (9th Cir. 1987).  Excess costs recoverable under 28 U.S.C. § 1927 include only those taxable costs enumerated in 28 U.S.C. § 1920 (costs taxable to a losing party).  *Roadway Express Inc. v. Piper*, 447 U.S. 752 (1980); see also, *United States v. Ross*, 535 F.2d 346, 350-51 (6th Cir. 1976)

---

[10] The twelve *Kerr* factors bearing on the reasonableness of a fee award are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

(expenses of empaneling a jury cannot be taxed as a cost under 28 U.S.C. § 1927 because not expressly set forth in § 1920 as an excess cost).

With respect to Regents Defendants, attorneys' fees and costs may be awarded from November 6, 2008 to the present pursuant to 28 U.S.C. §1927 for the reasons set forth above. The Court finds that Regents Defendants' billing rates for partners ($170), associates ($160), and paralegals ($80), as set forth in Mr. Pratt's declaration, are reasonable (See Dkt # 227). Because Regents Defendants only submitted a calculation of fees incurred for the entire duration of the litigation, beginning April 16, 2008, they would need to submit a new calculation of the hours spent on this case from November 6, 2008 to the present. As noted above, Defendants are not entitled to expert fees under 28 U.S.C. §1927, but only those costs enumerated in 28 U.S.C. § 1920 and allowed under local rules. The Court accepts the Bill of Costs entered by the Clerk on December 1, 2009 (Dkt #249),[11] but has adjusted the amount taxed to reflect an award of only those costs incurred after November 5, 2008 (that is, beginning on November 6, 2008).[12] The original amount taxed was $26,065.17; the adjusted amount that may be awarded is $21,018.37.

With respect to City Defendants, attorneys' fees and costs may be awarded from November 6, 2008 to the present pursuant to 28 U.S.C. §1927 for the reasons set forth above. The Court finds that City Attorneys' billing rates for deputy attorneys ($300), and investigators and paralegals ($75), and hours spent since November 6, 2008, as set forth in Mr. Wiener's declaration, (See Dkt # 231) are reasonable. City Defendants calculated attorneys' fees incurred after November 6, 2008 in the amount of $173,231.25 and are entitled to this amount, as well as any fees incurred since that initial calculation to the

---

[11]The Court considered the Clerk's Bill of Costs to Regents Defendants (Dkt #249) and Plaintiff's objections thereto (Dkt #241), and is satisfied that the amounts are appropriate. Plaintiff's assertions are largely unsupported by the record and were sufficiently rebutted by Regents Defendant's Reply (Dkt #242). Plaintiff's indigence need not be considered in assessing whether to impose costs against Plaintiff's *counsel.*

[12]This amount was re-calculated by referring to the specific amounts and dates attached to the Clerk's taxing of Bill and Costs to Regents Defendants, Dkt # 249, filed December 1, 2009.

C-08-2295 REPORT & RECOMMENDATION                                    Page 26 of 29

**United States District Court**
For the Northern District of California

present.[13]  As noted above, Defendants are not entitled to expert fees under 28 U.S.C. §1927, but only those costs enumerated in 28 U.S.C. § 1920.  The Court accepts the Bill of Costs entered by the Clerk on December 1, 2009 (Dkt #250),[14] but has adjusted the amount billed to reflect an award of only those costs incurred after November 5, 2008 (that is, beginning on November 6, 2008).[15]  The original amount taxed was $31,643.77; the adjusted amount that may be awarded is $23,735.99.  City Defendants proposed a third alternative, in the amount of $21,600, in the event the Court rejected either of its first two requested amounts.  This figure is an estimate of the amount of attorney time that was unnecessarily wasted because of Plaintiff's counsel's vexatious conduct throughout the litigation.  The Court is not convinced that this amount would adequately deter the kind of behavior at issue in this case and therefore does not recommend awarding this lesser amount.

     In determining the amount of sanctions to impose under § 1927, the court may consider the ability of the attorney to pay the sanction. In *Oliveri v. Thompson*, 803 F2d 1265 (2nd Cir. 1986), cert den *Suffolk County v. Graseck,* 480 U.S. 918 (1987), the court explained that given the underlying purpose of § 1927 sanctions to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations, it is well within the district court's discretion to temper the

_____

[13] The Court notes that City Defendants initally requested *all* attorneys' fees incurred in this suit for a total of $220,162.50 plus $34,110.75 in expert fees.  The amount of $173,831.25, was requested in the alternative.

[14] The Court considered the Clerk's Bill of Costs to City Defendants (Dkt #249) and Plaintiff's objections thereto (Dkt #244), and is satisfied that the amounts are appropriate. Plaintiff objected to City Defendant's bill for expert costs, which the Clerk rightly did not allow. Plaintiff also objected to the high subpoena service charges for four witnesses (family and friends of Plaintiff), arguing that Defense counsel could have simply asked for Plaintiff's help in serving these witnesses.  Given Plaintiff's often uncooperative behavior throughout the litigation, however, it was reasonable for Defendants to rely on a process server to effectuate process.

[15]This amount was re-calculated by referring to the specific amounts and dates listed in City Defendant's Bill of Costs (Dkt #225) filed November 3, 2009, and the amounts approved by the Clerk on December 1, 2009 (Dkt #250).

United States District Court

For the Northern District of California

1   amount to be imposed against an attorney by considering his or her ability to pay.[16]

2   Plaintiff's counsel was well aware that his conduct in the prosecution of his client's claims

3   was the subject of Defendants' motions and that he could be liable for a substantial amount

4   of attorneys' fees and costs.  In opposing Defendant's motion for attorneys' fees, however,

5   Plaintiff's counsel presented no evidence by way of declaration or other documentary

6   evidence establishing his inability to pay an award of attorney's fees and costs.  Moreover,

7   at the January 27, 2010 hearing, Plaintiff's counsel presented no evidence concerning his

8   ability to pay an award of sanctions, despite being given ample opportunity to do so.  The

9   district court may wish to request further information regarding counsel's ability to pay the

10  award of fees and costs.

11  **VI.   RECOMMENDATION**

12          Because of her lack of resources and apparent ignorance of her attorney's conduct,

13  Plaintiff should not be assessed fees under 42 U.S.C.  § 1988 or be required to pay

14  Defendants' costs.  Accordingly, the Court recommends that City Defendants' and Regents

15  Defendants' motions for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 be

16  DENIED and Plaintiff's motion to re-tax be GRANTED.  Plaintiff's attorney, however, may

17  be required to personally satisfy the attorneys' fees and costs reasonably incurred because

18  of his conduct from November 6, 2008 to the present, pursuant to 28 U.S.C. § 1927.

19  Accordingly, the Court recommends that City Defendants' and Regents Defendants'

20  motions for attorneys' fees and costs, pursuant to 28 U.S.C. § 1927, may be GRANTED.

21

22

23

24

25

26  _____

27  [16]See also *Rogers v. Kroger Co*, 586 F.Supp 597 (S.D. Tex 1984)(in view of relative
    financial posture of parties, plaintiff's counsel was solo practitioner, defendant was large
    corporation with stable financial base, as well as punitive nature of sanctions under § 1927,
28  court limited amount of sanction to $2500); *Taylor v. Belger Cartage Service Inc*, 102 FRD 172
    (W.D. Mo 1984) (where counsel refused to furnish information concerning his financial
    condition, court was unable to determine what adjustment should have been made).

Respectfully submitted,

DATED: March 10,  2010

_____
JAMES LARSON
U.S. Magistrate Judge

G:\JLALL\CASES\CIV-REF\08-2295\R&R 226, 230, 251- FINAL.wpd

**United States District Court**
For the Northern District of California